[Filed November 9, 1885.]

## J. A. CRAWFORD, L. FLINN, AND B. BRENNER v. JOHN BEARD AND AMBROSE BEARD.

EVIDENCE—ADMISSION NOT CONNECTED WITH TITLE OR POSSESSION.—In a suit to set aside a deed as in fraud of creditors, evidence of statements and admissions made by the grantor long after the execution of the deed, and unconnected with possession of the property, are immaterial.

JUDGMENT—ENTRY OF, BY CLERK, BY DEFAULT—(WALDO, C. J., dissenting).—The statute authorizing the clerk to enter judgment by default or upon confession is not unconstitutional.

CONSTITUTIONAL LAW.—When a statute has been long recognized as binding, and important affairs of the community have been transacted in accordance with its provisions, it should not be disturbed unless it unequivocally conflicts with the organic law.

FRAUDULENT CONVEYANCE—CREDITORS.—When a person who has contracted for the purchase of machinery conveys away his property before such machinery is delivered, his creditor may show that such conveyance was made with intent to defraud him.

ID.—SUBSEQUENT CREDITORS.—A subsequent creditor cannot attack such a conveyance except by showing that the grantor, at the time he made it, had in view the creation of such debt, and intended to defraud the creditor thereof.

ID.—FRAUDULENT INTENT—PRESUMPTION.—When the necessary result of a debtor's act is to place his property beyond the reach of legal process, it may be presumed that it was done with a fraudulent intent; but when the act is regular and fair upon its face the intent must be gathered from the surroundings.

ID.—VOIDABLE DEED MAY STAND FOR INDEMNITY.—A deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent, may be permitted to stand as security for any purpose of reimbursement or indemnity.

LINN COUNTY.  Defendants appeal.  Decree modified.

The facts are stated in the opinion.

*Weatherford & Blackburn,* for Appellants.

The legal presumption is that all conveyances are made in good faith and not fraudulently, and the burden of proof rests upon the one who seeks to impeach the same for fraud. (*O'Neal* v. *Boone,* 82 Ill. 589; *Kruse* v. *Prindle,* 8 Oreg. 162; *Mehlhop* v. *Pettibone,* 54 Wis. 656; *Darling* v. *Hurst,* 39 Mich. 765; Oreg. Code, p. 261, § 766, subd. 19.) Where a conveyance is made upon a valuable consideration, and is alleged to be fraudulent against the grantor's creditors, an actual and express intent to hinder, delay, or defraud is necessary to be proved. (2 Pom.

Eq. Juris. § 971, n. 2, § 972.) The purchaser may know. of the indebtedness of his vendor, but if he do not know of his intention to defraud, the sale will be valid. (*Evans* v. *Rugee*, 57 Wis. 623.) . The plaintiff Flinn has no standing in court, because the indebtedness to him accrued after the sale of the land, and plaintiff Crawford is in the same predicament because a portion of his claim accrued after the sale, and has been merged in a judgment with that which accrued prior thereto. (*Sheppard* v. *Thomas*, 24 Kan. 780; *Quimby* v. *Dill*, 40 Me. 528; *Baker* v. *Gilman*, 52 Barb. 26; *Moritz* v. *Hoffman*, 35 Ill. 553; *Usher* v. *Hazeltine*, 5 Greenl. 471; *Kane* v. *Roberts*, 40 Md. 594; *Lynch* v. *Raleigh*, 3 Ind. 273; *Watson* v. *Riskamire*, 45 Iowa, 233; *Stone* v. *Myers*, 9 Minn. 303; *Gale* v. *Gould*, 40 Mich. 515.) Leaving out of consideration our statute (Oreg. Code, p. 523, § 55), where there is a valuable consideration for the land conveyed, there must be proof of actual intent to defraud. (*Farlin* v. *Sook*, 30 Kan. 404.)

*L. Flinn*, and *H. H. Hewitt*, for Respondents.

Fraud may be either actual or constructive. Constructive fraud is not a fact, but a conclusion of law from ascertained facts. (*Sayre* v. *Fredericks*, 16 N. J. Eq. 209; *Barrett* v. *Barrett*, 5 Oreg. 413; *Page* v. *Grant*, 9 Oreg. 116; *Elfelt* v. *Hinch*, 5 Oreg. 255.) Positive and express proof of fraud is not required. It may be deduced from circumstances affording strong presumption. (*Elfelt* v. *Hinch*, 5 Oreg. 255; 3 Greenl. Ev. § 254; Story Eq. Juris. § 190.) The conveyance of a man's whole estate to a near relative, as in this case, affords a very violent presumption of fraud. (*McDonald* v. *Farrell*, 60 Iowa, 337; Wait Fraudulent Conveyances, §§ 231, 243; Bump Fraudulent Conveyances, p. 34; *Moore* v. *Roe*, 35 N. J. Eq. 90.) The statute authorizing judgments by default or upon confession to be entered by the clerk in vacation is not unconstitutional; the clerk in entering judgment acts ministerially and not judicially. (*Willson* v. *Cleveland*, 30 Cal. 198; *Providence T. Co.* v. *Prader*, 32 Cal. 636; *Gray* v. *Palmer*, 28 Cal. 416; *Leese* v. *Clark*, 28

Cal. 33;. *Harding* v. *Cowing*, 28 Cal. 212; *Humboldt M. & M.. Co.* v. *Terry*, 11 Nev. 237; *Durham* v. *Brown*, 24 Ill. 93; *Lan-- ning* v. *Carpenter*, 23 Barb. 413; *Hempstead* v. *Drummond*, 1 Pinn. 534; *Wells* v. *Morton*, 10 Wis. 468; *Edwards* v. *Pitzer*, 12 Iowa, 607; *Choat* v. *Bennett*, 13 Ark. 313.) Courts never declare a statute unconstitutional unless the fact is placed beyond a reasonable doubt. (*Talbot* v. *Hudson*, 16 Gray, 422; *Ogden* v. *Saunders*, 12 Wheat. 270; *Crowley* v. *State*, 11 Oreg. 512; *People* v. *Supervisors etc.* 17 N. Y. 241.) It is the duty of courts "so to construe every act of the legislature as to. make it consistent, if it be possible, with the provisions of the. Constitution." (*Dow* v. *Norris*, 4 N. H. 17; *Clarke* v. *Rochester*, 24 Barb. 471; *Marshall* v. *Grimes*, 41 Miss. 27.) When. it appears that the intention of the parties to the deed was to, put the property beyond the reach of the creditors of John Beard, the transaction was void as to subsequent as well as, existing creditors. (*Page* v. *Grant*, 9 Oreg. 120; Kerr Fraud and Mistake, p. 207; Wait Fraudulent Conveyances, § 100;. 1 Story Eq. Juris. §§ 361, 362; *Reade* v. *Livingston*, 3 Johns., Ch. 499; *Cook* v. *Johnson*, 1 Beasl. 54.)

THAYER, J.—This is an appeal from a decree rendered by the Circuit Court for the county of Linn, in a suit brought by the said respondents against the said appellants, to subject certain real property to the payment of three several judgments obtained. by the said respondents severally against the appellant John Beard, in actions at law in said Circuit Court. Said Crawford's judgment was recovered on the 25th day of September, 1883, for the sum of $1,291.51 with costs of action; said Brenner's was recovered October 18, 1883, for the sum of $722.83, with costs of action; and said Flinn's on the same day for the sum of $321.03, with costs of action. Flinn's judgment was also against one J. J. Beard, who was jointly liable with said John Beard. Executions were duly issued upon each of said judgments, and returned unsatisfied prior to the commencement of the suit.

It appears that Crawford's judgment was upon three promis-- sory notes, one of which bore date in 1875, and is for $596; the

other two August 4, 1881, and are for the aggregate sum of $300; the latter notes were executed to Frank Bros., and transferred by them to Crawford. Brenner's judgment was upon a promissory note which bore date December 13, 1878; and Flinn's judgment was upon a promissory note executed to him by said John and J. J. Beard, jointly, on the 15th day of August, 1881.

The said real property is situated in said county of Linn, and is a part of the said donation land claim of said John Beard and wife. Said Beard settled upon said land claim under the donation act, and obtained a patent to it from the United States. The land in suit is the husband's half, consisting of about 180 acres. Said John Beard, on the 11th day of February, 1881, executed a deed of conveyance to his son, the said Ambrose Beard, which purported to convey the said land to him. The respondents alleged in their complaint that said deed was so executed by the said John Beard to the said Ambrose Beard to delay and defraud the creditors of the former, which is the main question to be determined upon the appeal. Two of the said judgments were obtained by default, and entered by the clerk of said Circuit Court in vacation, without any order of the court, and the third was entered by the said clerk upon confession. The appellants' counsel deny the validity of said judgments, and claim that the statute authorizing a judgment to be entered in such a case is unconstitutional. Said counsel also claim that only part of the debt upon which the said Crawford's judgment was recovered existed at the time the said deed from John to Ambrose Beard was executed, and none of the debt upon which the said Flinn's judgment was recovered existed at said time. And it is further claimed upon the part of the said appellants that said deed was given in good faith and for a valuable consideration.

A large amount of testimony was taken in the case, a great portion of which was immaterial. The proof of statements and admissions made by said John Beard, long after he executed the said deed of the 11th day of February, 1881, unconnected with possession of the property or other circumstances, had no

weight; nor was the proof that Ambrose Beard was not known to have had property at the time he is claimed to have purchased and paid for the land of any consequence. It is not pretended that he paid for it with money and property he then had. He claims, however, that at the age of twenty years his father gave him his time, and that for four years or more prior to the date of the said deed he had occupied the said donation claim, including his mother's portion thereof, as a renter; that he worked it upon shares; that his father had sold his portion of the crop, and that at the time the land was deeded to him his father owed him for a thousand bushels of wheat and about $300 besides; that there was a mortgage upon the land in suit of $1,500 principal, and about $480 accrued interest; that he was to pay for the land by assuming the said mortgage, was to give his father said thousand bushels of wheat, and deliver to him four thousand bushels the following season. With this kind of arrangement it was unimportant whether his neighbors knew whether he had any property or not, or whether he had, prior to 1881, been assessed for taxes upon any property or not. The more important question was, whether his father did owe him a thousand bushels of wheat and $300 at the time referred to, or any wheat or money; whether he delivered to his father the said four thousand bushels of wheat or any wheat, as he claimed to have done. The proof as to what his neighbors thought about his general financial condition, and that he had not been assessed upon property for the purposes of taxation, or as to how much farmers are accustomed to make off of farms in that vicinity, has no tendency to disprove what Ambrose claimed were the facts of the case. Said proof, in my judgment, was almost or quite valueless.

The respondents' counsel claims that the whole of the debt due to Crawford existed when the deed was executed; and that the notes to Frank Bros. were for farming machinery which John Beard ordered in 1880, but did not receive until 1881, at about the time the said notes were executed, but they admit that none of the debt due to Flinn existed at said time.

The view I am inclined to adopt in adjusting the rights of the

parties to the controversy, renders it necessary to consider first the question as to the validity of the alleged judgment against John Beard. It is contended upon the part of the appellants that the entry of judgment by default or upon confession, involves the exercise of judicial power, and that, as all judicial power in this State is required to be vested in certain courts, the legislature had no authority to confer any such power upon the clerk. The decisions of other courts under similar provisions of statute or organic restrictions are conflicting. The point of difference between them is a disagreement as to whether such entry is a judicial or ministerial act. If I were required to decide the abstract question I should be very much inclined to hold that the rendition of judgment, in all cases, was a judicial act. The mere entry of judgment, no doubt, is a ministerial duty, but it seems to me that before such entry can be made there must be an adjudication, either that the facts admitted, or the confession and statement in the particular case, entitle the party to a judgment. But our statute upon the subject has been in force for nearly twenty years. It may be said to have been acquiesced in by the bar, and it has tacitly been upheld by the courts. It has become a rule of practice, and if pronounced invalid now would cause disturbance of property rights, and occasion great mischief. When an act of the legislature has been so long recognized as binding, and important affairs of the community affecting individual rights have been transacted in accordance with its provisions, it should not be disturbed unless it plainly and unequivocally conflicts with the organic law. An act which has been sanctioned by the community ought not to be declared unconstitutional by the courts, when the question is in any degree doubtful. Whatever, therefore, my own private notions upon the subject are, so long as I am not positively certain of their correctness, I feel constrained to hold that such judgments are valid.

The appellants' counsel contend that neither the said Crawford nor the said Flinn has any standing to question the *bona fides* of the said deed, as a portion of the claim of the former, they allege, accrued after the execution of the deed, and that

the whole of the latter's accrued after its execution. It is not so evident that any part of Crawford's claim accrued after the deed was made. The notes for the portion alleged to have so accrued were given after said time, but the evidence shows that the order for the machinery was given by John Beard·to Frank Bros. in 1880. The debt may not have legally been contracted until the machinery was delivered, but if the sale of the land was *mala fide*, a creditor to whom an order had been given for an article prior to the sale, and out of which the indebtedness arose, had a right to question the transaction, although the article was not delivered until afterwards. The debt was in process of contraction at the time, and I think the creditor could claim, in case the debtor fraudulently sold his property during the interval, that it was done with intent to defraud him. The statute upon the subject is not confined to creditors. It says: "Made with the intent to delay, hinder, or defraud creditors or other persons," etc. (Misc. Laws, § 51, ch. 6.) If said John Beard made said deed to Ambrose Beard to defraud his creditors, it would certainly have included the Frank Bros. claim that was transferred to Crawford.

The Flinn claim stood upon a different basis. That debt was not contracted until long after the deed was executed and upon record. It arose out of the renting of a warehouse let to John and J. J. Beard, and the deed could not be questioned by the holder of that debt, unless it were shown that when the said John Beard executed the deed he had in view the creation of the said debt, and intended to defraud the creditor thereof. In the language of Bump on Fraudulent Conveyances, "the conveyance must be made with an intent to put the property out of the reach of debts, which the grantor at the time of the conveyance intended to contract, and which he does not intend to pay, or has reasonable grounds to believe that he may not be able to pay." The decision in *Page* v. *Grant*, 9 Oreg. 120, was not intended to establish any different doctrine than this, though the language employed in the opinion is very general. The purpose and intent for which the deed was given must be ascertained by an examination of all the facts and circumstances of

the case, and if the legitimate inference drawn therefrom is that John Beard intended by the execution of said deed to delay, hinder, or defraud his creditors, and that Ambrose Beard knew when he received it that such was the intent, then it is void as to existing creditors, or subsequent, if the grantor contemplated the contraction of the debts and did not intend to pay them, or had reasonable grounds to believe that he would not be able to pay them.

The respondents' counsel contend that the conveyance from John Beard of the property in question included all his property; that the appellants' account of the affair was vague, uncertain, and contradictory, and that it should be inferred therefrom, in view of the relations of the parties, and the manner in which they had conducted their business before and after the deed was executed, that it was intended to defraud the creditors of said John Beard. Fraud is established in such a case by inference or presumption. It may be inferred or presumed from the nature and character of the transaction itself, or from facts and circumstances connected with it. If the necessary result of the act is to place the debtor's property beyond the reach of legal process, so as to delay creditors, it will be presumed that it was done with a fraudulent intent; but when the act is apparently regular and fair upon its face, the intent must be gathered from the surroundings. In such a case the tests, which reason and experience have shown were indicative of a fraudulent design and purpose, must be resorted to in order to ascertain the probable motive which actuated the parties in the affair. In this case, there is nothing upon the face of the transaction indicating bad faith. John Beard was in debt, it is true, but that did not preclude him from selling his farm. The deed is in the ordinary form. It recites a valuable consideration as having been received, and was placed upon record immediately after its execution. The conveyance was from a father to a son, but the latter was of full age and had an undoubted right to purchase his father's estate. The evidence, therefore, that the sale was made with intent to hinder, delay, or defraud creditors must be sought for outside of the apparent facts in the case. The

consideration recited in the deed is open to inquiry, and if shown to be only a pretense, the inference would necessarily follow that the transaction was merely colorable. The respondents have attempted to show that there was no consideration in fact for the conveyance, and if they have succeeded in showing that, they have established their cause of suit. That is the vital question in the case.

The testimony tends to show that Ambrose Beard and his father had some negotiation in regard to the sale and purchase of the said land in 1880; that a bond for a deed was drawn up and some notes written out, but the matter was not consummated; that about the time the said deed was executed, they concluded to make a different arrangement, whereby Ambrose was to buy the land, turn in a claim for a thousand bushels of wheat his father owed him, assume the mortgage upon said land that had been executed by John Beard to John Thomas, and the interest accrued thereon, amounting to $480, and deliver to his father in the following fall four thousand bushels of wheat in full payment of the land. The deed was made and executed and recorded, and I am satisfied from the evidence that said Ambrose delivered to the said John Beard, in pursuance of the bargain, three thousand nine hundred and one bushels and fourteen pounds of wheat.

The testimony of J. J. Beard establishes that fact very fully. He testified that he and John Beard were partners in the warehouse business. Says: "We commenced about August 15th, I won't be positive; some time in the fore part of August, 1881." He was then asked this question: "Will you please turn to the warehouse book for the firm for that year and state how much wheat was left stored there with the firm by Ambrose Beard in the fall of 1881?" Answer. "Three thousand nine hundred and one bushels and fourteen pounds." Question. "State who sold that wheat, when it was sold, and the prices received." A. "The first lot of wheat sold was two hundred and twenty-nine bushels, for seventy-three and one half cents per bushel, September 23d. On September 24th he sold one thousand bushels for seventy-six and one half cents. I haven't got the price of the

other wheat; December 9th, five hundred bushels; October 26th, seven hundred and sixty-five bushels; December 17th, one thousand four hundred and seven bushels and fourteen pounds; I think it was seventy-nine cents, wouldn't be positive." Q. 12. "To whom was the money paid for the wheat?" A. "To John Beard, I gave him an order on himself for it. He was the treasurer."

These sales, as I compute them, amount to \$3,040.69½, which was the product of the crop of wheat Ambrose Beard raised from the entire farm in the year of 1881. It is claimed by counsel for the respondents that John Beard paid out this money by paying off the interest on the mortgage, the \$480, and the expenses of working the place. I think the evidence shows that John Beard did pay the \$480, though Ambrose claims that he repaid it, or that it was paid out of his money. There is no evidence that John Beard paid any of the expenses of the farm that I have discovered.

It is also claimed by said counsel that Ambrose Beard, after the deed was executed to him, continued to occupy the place as before; that John Beard remained in possession and controlled the management. I do not think the evidence shows that. It is true the parties lived in the same house, but that, with the other buildings upon the claim, and the orchard, were on Mrs. Beard's part. J. J. Beard testifies that Ambrose, after the deed was made, seemed to take the management of affairs; "there was an apparent change in the management and control of the place when the deed was executed."

As I view the matter, there was an intended sale of the property to Ambrose Beard. John Beard had grown old and evidently had not been successful in farming, and some time prior to the summer of 1881 he conceived the idea of going into the warehouse business, and probably thought he would sell to Ambrose and take his pay for the part that would be coming to him in wheat; that he would be in the wheat business and could dispose of the wheat at a better advantage. The dealings between the parties were very loose. It would not seem, by the answer filed in the suit, that they had any definite idea as to

what their arrangements were. It was understood between them that the old gentlemen owed his son a thousand bushels of wheat, or for that amount of wheat, and some money, but they could neither of them give an intelligent idea about it, yet they made the bargain upon that understanding, and the land was deeded to Ambrose.

That either of the parties actually intended to defraud the creditors of John Beard, I do not think can be maintained from the facts and circumstances of the case. I have no idea that the creditors were considered or thought of. The debts had been standing then a long time, except the portion for the farming machinery which was only in process of creation. No effort seems to have been made upon the part of the creditors, Crawford and Brenner, to collect them. It was not a case where a debtor was being pressed for payment, and was compelled to make a shift. The claims were drawing interest at the rate of one per cent a month, and the holders were no doubt content to let them run. The interest at that rate, kept up for seven or eight years, would produce an amount equal to the principal. Said creditors never manifested sufficient interest in their claims to ascertain before two years and a half that the said deed had been made, although it stood recorded during all that time in the record of deeds in the clerk's office in the town where they lived. They seem to have manifested an entire indifference in regard to the payment of their claims, and they are not entitled to any credit for leniency. The creditor who holds a note against a farmer, that is drawing twelve per cent annual interest, does not confer any benefit on the latter by a forbearance of the debt, as a general thing. It will ordinarily be only a matter of time when the interest eats up the farm.

But while the appellants may not have intended to defraud the creditors of John Beard by the transaction, yet there are suspicious circumstances as to the amount of consideration paid, and of the basis of the transaction. It does not appear sufficiently certain that John Beard owed Ambrose any wheat, or for any wheat, or any money, at the time the deed was executed, nor is it shown satisfactorily that Ambrose furnished the money

that was paid for interest on the said mortgage to Thomas, the $480, and the $300 paid subsequently. It is a well established rule of equity that a deed obtained under suspicious or inequitable circumstances, or which is only constructively fraudulent, may be permitted to stand as security for any purpose of reimbursement or indemnity. (*Boyd* v. *Dunlap*, 1 Johns. Ch. 478.) I believe this case comes within the principle of that rule. I think that Ambrose Beard should be repaid for the wheat delivered to his father after the deed was executed—the three thousand nine hundred and one bushels and fourteen pounds—after making a reasonable reduction for the use of the premises during the four years he occupied them. According to his own testimony there must have been raised off the premises in question in the year 1881, of the three thousand nine hundred and one bushels and fourteen pounds, about three thousand bushels. Allowing a third of that for the use of the land, it would amount to one thousand bushels, which, at seventy-eight cents a bushel, would be $780, leaving due to said Ambrose $2,261.69½. The rent for the other three years subsequent cannot be ascertained with any degree of accuracy. It does not appear what the farm has produced during that time. The product of 1881 is probably no criterion, as the amount of the yield in such cases depends very much on favorable conditions. The $2,261.69½ should draw interest, which at eight per cent per annum would be about $181 a year, which for four years would amount to $724, and added to the principal would make $2,985.69½. Four hundred dollars a year rent for the three years would be a safe estimate, I think. That would amount to $1,200, which, taken from the former sum, would leave $1,785.69½ due the said Ambrose as a charge upon said land.

The decree will therefore be: • *First*, that from the proceeds of the sale of said land, made under the decree of the Circuit Court, the costs and disbursements of said suit and the expenses of making said sale be first paid. *Second*, that the said sum of $1,785.69½ be next paid therefrom to the said Ambrose Beard. *Third*, that the claim of said Crawford and Brenner be next paid therefrom, if sufficient remains. *Fourth*, that the claim of

said Flinn be next paid therefrom, if sufficient remains, and the remainder, if there be any, be paid over to the said Ambrose Beard.    That neither party recover costs or disbursements upon the appeal.

The chief justice is of the opinion that the statute conferring upon clerks power to enter a judgment in such a case is unconstitutional and void, and that the maxim *communis error facit jus* is inapplicable.    (*Pease* v. *Peck*, 18 How. 597.)