# CHARLESTON.

## WEBB *v.* INGHAM *et al.*

|  29  389 |
| j 52  607 |

Submitted January 23, 1887.—Decided February 12, 1887.

1. FRAUDULENT CONVEYANCE—HUSBAND AND WIFE—CONSIDERATION.
    A conveyance of the real estate, made directly or indirectly by a husband to his wife in consideration of a valid debt due from the husband to the wife, is fraudulent and void as to the existing creditors of the husband, when it is shown that said consideration is much less than the value placed upon the property by both the husband and the wife and they attempt to make out a consideration equal to or in excess of the value of the property by adding to said valid debt other indebtedness of the husband to the wife which had no existence in fact. (p. 391.)

2. FRAUDULENT CONVEYANCE—CONSIDERATION.
    In such case, if it appears that the wife actively participated in the attempt to sustain said conveyance by claiming that such additional and unfounded indebtedness was a part of the consideration for the property, the conveyance will be treated as fraudulent in fact and void *in toto* as to the creditors of the husband and will not be permitted to stand as security to the wife for the valid portion of the consideration paid by her as against such creditors. (p. 395.)

3. FRAUDULENT CONVEYANCE—CONSIDERATION—BADGE OF FRAUD.
    When such conveyance is made in consideration of a pre-exist-
ing indebtedness, it is a badge of fraud for the grantee to retain
the evidence of such indebtedness in his possession uncancelled af-
ter the conveyance has been completed.    (p. 396.)

*Simms & Enslow* for appellant.

*J. M. Layne* and *F. L. Michie* for appellee.

SNYDER, JUDGE :

Suit in equity brought June 14, 1884, in the Circuit Court
of Cabell county by J. W. Webb against S. W. Ingham and
others, to set aside, as being voluntary and fraudulent, cer-
tain conveyances, whereby the defendant, Ingham, trans-
ferred to his wife certain real estate in the city of Hunting-
ton, and to subject said real estate to the satisfaction of the
debt due from said Ingham to the plaintiff. The cause was
heard on the bill, exhibits, answer of the defendants, Ing-
ham and wife, replication thereto, commississioner's report
and depositions, and a decree was entered by the court, on
March 26, 1885, granting the relief prayed for by the plain-
tiff. From this decree Ingham and wife have appealed.

It appears from the record, that on May 15, 1872, the Cen-
tral Land Co. had by written contract agreed to convey
to the appellant, S. W. Ingham, lots No. 13 and No. 14,
block 121, in the city of Huntington, Cabell county, at
the price of $1,350.00, of which he paid at the time $540.00,
leaving yet due thereon $810.00 with interest from date, all
of which is still unpaid. On October 23, 1883, by endorse-
ment on said written contract Ingham assigned all his right,
title and interest in and to said lots to his son-in-law, I. R.
Titus, who by deed dated March 18, 1884, conveyed the said
lots to Sarah J. Ingham, the wife of S. W. Ingham. Be-
tween 1872 and 1883, Ingham had built several houses on
said lots so as to make their value at the latter date $5,000.00.
Ingham and wife were married in the State of Pennsylvania
about the year 1854. Prior to her marriage the wife had
been engaged in the millinery business on her own account
and so continued until 1872, at which time she sold her stock
and business and received therefor $2,000.00. She and her
husband then removed to Huntington and she deposited said

$2,000.00 in bank in her own name.    In May, 1872, she loaned her husband $1,750.33 of this money and took his note therefor payable to herself thirty days after date.    On July 28, 1883, a note was executed to her by her husband for $3,000.00 as the result of a settlement then made between them.    Both of these notes were still held by the wife when this suit was brought.    Some time after Ingham and wife came to Huntington they entered into partnership and conducted the dry goods and millinery business under the firm name of S. W. Ingham & Co. from that time until in July, 1881, when they sold their stock of goods and business. They then removed to Cincinnati, Ohio, and shortly thereafter S. W. Ingham & Co. commenced the commission business in that city and the same was carried on until about 1884.

The plaintiff endorsed two notes drawn by S. W. Ingham & Co., the one for $500.00 dated August 21, 1883, payable four months after date, and the other for $426.83, dated January 19, 1884, and payable four months after date—this latter was in renewal of a note, dated in September, 1883, which had also been endorsed by the plaintiff.    Both of said notes were protested and afterwards paid by the plaintiff. This suit is brought to recover the amounts of said notes so paid by the plaintiff for S. W. Ingham & Co.

The foregoing facts seem to be undisputed.    Other matters more or less controverted will be noticed in the discussion of the questions presented for decision.

The bill alleges that both S. W. Ingham and his wife are bound as partners for the payment of said notes.    The defendant, Sarah J. Ingham, admits that she was a partner in the firm of S. W. Ingham & Co. during the time it did business at Huntington, but denies, that she was a partner after 1881, or at any time during the period said firm did business in Cincinnati.    From the facts and circumstances in evidence, I think it probable she was regarded as a partner both in Cincinnati and Huntington, but whether she was so considered or not it is not necessary to decide in this cause. It is certain, however, that every contract made by a married woman living with her husband is absolutely void at law, and therefore it must follow a married woman can not

make a contract of partnership with her husband or any one else, which could be recognized in a court of law. ( *Carey* v. *Burress*, 20 W. Va. 571). It is even questionable whether such contract with her husband could be recognized and enforced in a court of equity. ( *Roseberry* v. *Roseberry*, 27 W. Va. 759.)

The bill further charges, that the conveyances aforesaid, by which the equitable title to said lots No. 13 and No. 14 was transferred to the wife of S. W. Ingham were made without consideration and for the purpose of defrauding the plaintiff and other creditors of S. W. Ingham. This allegation is denied by both Ingham and wife.

It is fully proved, that Titus, to whom the husband conveyed or assigned said lots, paid no consideration whatever therefor. And it is in like manner proven, that Titus, who conveyed the lots to the wife, received no consideration whatever for said conveyance. It is admitted, that Titus was merely the instrument or conduit to effect a transfer of the lots from Ingham to his wife. The only effort on the part of Ingham and wife was to establish, that a full consideration passed from the wife to the husband for the conveyance of the lots to the wife. In support of this effort Ingham and wife claim and testify, that the $3,000, for which the wife held the note of her husband as hereinbefore stated, was a part of the consideration for said conveyance, and that in addition thereto the wife, with money and the proceeds of the sale of property obtained from her father, purchased and improved a lot on Third avenue in Huntington, which had been conveyed to her in her own right and name, that the rents of this property for several years were collected and used by the husband, and at the time of the said conveyance of the lot to the wife the husband was indebted to her on account of said rents about the sum of $800.00, which sum with said $3,000.00 and the vendor's lien on the lots in favor of the Central Land Co. was the consideration paid by the wife to the husband for said lots.

Conceding that the husband was justly indebted to the wife at the time of said transfer the amount for which she held his note, to wit, $3,000.00, this, I think, is the full extent of said indebtedness shown by all the facts and circum-

stances in this cause. It is not even satisfactorily shown, that the whole of this sum was due from the husband to the wife, and the facts are wholly inconsistent with the claim, that there was in fact any such indebtedness greater than this sum. Both the husband and wife testify, that they, as equal partners, conducted the dry goods and millinery business in Huntington from 1872 to 1881. If the wife was an equal partner she must have put in one half of the capital used in the business. When the business was commenced she had but $2,000.00. She must then have used the whole or the greater part of this sum as her capital in the partnership. Whether the business made or lost money does not distinctly appear, but the probability from the testimony is, that there were no profits and perhaps a loss of part of the capital; for the husband testifies in answer to the question: " What did you do with the profits and proceeds of your business while in Huntington?" as follows: " A good deal of it scattered around Huntington. I had about $2,000.00 here and $500.00 at Wayne Court House and $1,500.00 in land in Wayne, taken in trade with· Barbour, and the rest profit and loss. The $2,000.00 I took to Cincinnati with me." The wife testifies, that she and her husband had a settlement in July, 1883, and that she could not tell the exact amount she received for her interest in the store "as it was put in with other accounts that he owed me." Now the $3,000.00 note is dated July 28, 1883, and this note is evidently the result of the settlement thus made in July, 1883, and included not only her share of the proceeds of the sale of the partnership business in Huntington, but also all " other accounts that he " (the husband) owed the wife. The natural inference from these and other facts and circumstances in the record is that the wife put the $2,000.00 which she had in 1872, into the firm business of S. W. Ingham & Co. This of course covered and included the $1,750.00 for which she had before taken the note of her husband. At the close of the firm business and after the sale of it, the wife was entitled to one half of the proceeds, which according to the testimony of the husband before stated would be $2,000.00, being the one half of the $4,000.00 for which the whole was sold. The husband took

the whole of these proceeds; that is, as he says, he had
$2,000.00 which he took to Cincinnati, $500.00 at Wayne C. H.
and $1,500.00 in land in Wayne county, which he took from
Barbour to whom they sold their stock and business in Hunt-
ington. The husband having thus taken the whole $4,000.00,
the proceeds of the sale of the business, he owed his wife the
one half thereof or $2,000.00 on that account; and in July,
1883, they had a general settlement, including the interest
of the wife in the proceeds of the sale of the store and all
other accounts, which the husband owed her. This, it seems
to me, must have included the rents due her which she now
claims as a separate charge against her husband. In some
portions of their testimony Ingham and wife claim that this
note of $3,000.00 was simply a renewal of the note of
$1,750.33, and in others that it included other items and was
the result of the settlement made in July, 1883. The wife
could not be entitled to interest on the $1,750.00 note while
she had that money invested in the partnership business.
The fair inference is that the partneship was not very profit-
able and that after the sale the husband agreed to return to
the wife the $2,000.00, which she had probable put into it,
and that this sum, with the rents of the wife's property
which he had used and other accounts found to be due her
on settlement, made up the note of $3,000.00 which he
gave her on July 28, 1883. Unless the rents are included
in this note given for them there was no note given for
them then or at any other time. It is not reason-
able to suppose that, if the parties had a settlement
in which other accounts were included and · a note
given for the amount found due, that the rents then due
would have been excluded and no note given for them then
or at any other time. My conclusion, therefore, is, that the
most that can be claimed for appellants is that the husband
was indebted to the wife the $3,000.00, the amount of the note
of July 28, 1883.

The appellants themselves concede and testify, that the
lots with the buildings thereon, at the time they were trans-
ferred to the wife, were worth at least $5,000.00. The bal-
ance due on the vendor's lien at that time was about
$1,350.00, and this with the $3,000.00, which the husband

may have then owed the wife would be only $4,350.00, or $350.00 less than the admitted value of the property. It is unreasonable to suppose that, if this had been a sale made in good faith, it would have been for a sum so much less than the admitted value of the property. This would have been sufficient to impeach the sale if had been a transaction between strangers. But in this instance the transaction was between a husband and his wife, which fact of itself raises a suspicion of unfairness whenever the result is to throw a loss on the creditors of the husband. In all cases of contest between the creditors of the husband and the wife there is a presumption against her which she must overcome by affirmative proof. (*Seitz* v. *Nitshell*, 94 U. S. 580; *Herzog* v. *Weiller*, 24 W. Va. 199).

It has been repeatedly decided by this Court, that fraud may be legally inferred from the facts and circumstances of the case, when they are of such a character as to reasonably lead to the conclusion, that the transaction complained of was made with a fraudulent intent. And where the circumstances are such as to make a *prima facie* case of such fraudulent intent, they are to be taken as conclusive, unless rebutted by other facts and circumstances in the case. (*Loekhard* v. *Beckley*, 10 W. Va. 87; *Livesay* v. *Beard*, 22 Id. 585, 593 and cases cited)

The conveyance here was not only made for an inadequate consideration and from a husband to his wife, but it was made when the husband was indebted for the very debts for which this suit is brought to subject the property conveyed. The husband was under the highest moral as well as legal obligation to pay these debts. The plaintiff had no other interest in them than as an accommodation endorser for the husband. Yet in order to avoid this high obligation he transfers his property to his wife for a consideration much below his own estimate of its value. When a debtor in failing circumstances conveys his property for an inadequate consideration, this fact is evidence also of a fraudulent intent. And where the conveyance is without consideration or for a grossly inadequate consideration, of which the grantee has knowledge, or if the conveyance is fraudulent in fact, then in either of such cases, the conveyance is

void *in toto* and can not stand as security· for any valuable consideration that may have been paid by or secured to· the grantee. (*Livesay* v. *Beard*, 22 W. Va. 585; *Goshorn* v.. *Snodgrass*, 17 Id. 717; *Chaplin* v. *Foley*, Id. 434; *Garland* v. *Rives*, 4 Rand. 310; *Mackie* v. *Cairns*, 5· Cow. 547; *Duncan* v. *Custard*, 24 W. Va. 730).

In this· case there is still another badge of fraud. If the sale had been *bona fide* the wife would have surrendered or cancelled the note of her husband, which she claims formed, in part, the consideration of the conveyance to her. But instead of doing either, she still holds the note and produced it uncancelled in evidence in this cause. It is not usual for the creditor to retain the evidence of debt after the same has been paid. The whole case, it seems to me, presents the strongest evidence of a mere device or fraudulent arrangement between the husband and wife by . which it was· attempted to transfer the property of the husband to the wife in order to shield it from the just demands of the husband's· creditors. It is shown that both the husband and the wife participated in this fraudulent device, and therefore according to the authorities· before cited the conveyance is void *in toto* and can not be allowed to stand, as· against the plaintiff and other creditors of the husband,. even as security for the actual consideration paid by the wife. I am therefore of opinion, that the decree of the Circuit Court should be affirmed.

AFFIRMED.