## BATES and others *v.* McCONNELL and another.

*(Circuit Court, D. Nebraska,   August 2, 1887.)*

1. FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—EVIDENCES OF DEBT.
    A merchant who failed in 1884 started in business in 1872 with $12,000, loaned him by his wife. Her security was a note at five years, with interest at 10 per cent. On his failure, he conveyed considerable real estate to her in satisfaction of the debt. She claimed that the note had been twice renewed, with compound interest, viz., five and ten years from its date. The original note and one renewal note were, as produced by her, suspicious on their face. *Held,* that as between the wife and the creditors of the husband, the wife was entitled to be paid, out of the property deeded her, $12,000, with interest at ten per cent., and that all over and above that was to go to the satisfaction of the claims of the creditors.[1]

2. SAME—PURCHASE OF JUDGMENTS.
    It is competent for attaching creditors of an insolvent merchant to sell their claims to his wife at half their value, she paying for them out of her own funds; but where the property attached is ample to pay the claims in full, and they are satisfied out of the proceeds of the property, and the trans-

[1] See note at end of case.

action is a mere scheme of the husband to prevent part of his effects going in satisfaction of his just debts, the wife will be held accountable as trustee for the other creditors, to the extent of the balance of the property not applied to the payment of the claims of the attaching creditors.[1]

In Equity. Bill to set aside conveyances as in fraud of creditors.

BREWER, J. Complainants are judgment creditors of John McConnell. He was a merchant doing business in Lincoln, Nebraska, from January, 1872, to December, 1884, at which time he failed. About two months prior to his failure he conveyed a large amount of real estate to his wife in payment of an alleged indebtedness. At the time of his failure he gave a chattel mortgage on his stock to a bank in Lincoln, which had a claim of about $20,000. The bank took possession of this stock under the mortgage, and proceeded to sell the same to satisfy its claim. Other creditors commenced attachment proceedings, seeking to obtain satisfaction of their claims out of the stock of goods after the payment of the mortgage note. This stock was ample for the payment of the mortgage, as well as the claims of these attachment creditors. Those claims were placed in judgment, the judgments assigned by the several creditors to Mrs. McConnell for 50 cents on the dollar, or thereabouts. These judgments were satisfied in full out of the proceeds of this stock of goods, so that one-half of the amount of these judgments really passed to Mrs. McConnell. Complainants have filed this creditors' bill, seeking to set aside the conveyances made to Mrs. McConnell as fraudulent, and also to charge her as trustee for their benefit of the amounts received by her in collection of those various judgments.

Noticing the last matter first, I remark that unquestionably a creditor having a valid claim may do what he pleases with it, giving all or any portion to the wife of the debtor; and, if such gift is made, the wife takes the property thus given free from the claim of any other creditor of her husband. So, if these several creditors had intended to give one-half of their claims to Mrs. McConnell, the money she thus obtained would be hers free from any claim of complainants. Or if they elected to sell their claims for 50 cents on the dollar, or any other sum, to her, and she paid therefor out of her own moneys, she would hold these judgments, and the proceeds thereof, free from any claim of complainants. But it is also true that equity looks beyond the mere form of the transaction, at the real facts, and I have no doubt from the testimony that all this matter of an assignment of the judgments to Mrs. McConnell was a mere trick, and not a *bona fide* purchase by her. After his failure, Mr. McConnell offered to pay 50 cents on the dollar; sent statements to that effect to his various creditors. These, complainants, the largest creditors, would not accept; the others, having smaller claims, were willing. As all did not accept, that proposition seems to have fallen through, and this scheme of the assignment was substituted. But the whole thing was managed by McConnell. The creditors had expressed a willingness

[1]See note at end of case.

to take 50 cents.  They were paid 50 cents, and the purchase in the name of Mrs. McConnell was simply a transaction of his own, for the purpose of giving to his wife the proceeds of goods which should in good faith have gone to his own creditors.  The testimony of Mrs. McConnell shows that it was not an effort of hers to speculate on these judgments. She acted simply as Mr. McConnell and his lawyers advised.  So, although the form of the transaction was a purchase of the judgments by Mrs. McConnell, and though the law as to gifts and sales by creditors be as I have above stated, yet I think, looking at the real transaction, it must be adjudged a mere scheme of Mr. McConnell to prevent part of his property going in satisfaction of his just debts.  This the law will not tolerate, and she must be charged as trustee for the amount thus received for the benefit of complainants.

As to the conveyances of property, prior to the failure, to Mrs. McConnell, in satisfaction of an alleged debt, I remark this:  It is undoubted that when Mr. McConnell went into business, in 1872, he started with a stock of from sixteen to eighteen thousand dollars, twelve thousand dollars of which was paid by Mrs. McConnell with land which was her separate property.  She testifies that she took a note for that $12,000, running five years, with interest at 10 per cent., payable annually. At the end of five years, nothing having been paid, the interest was computed, and a new note taken for the amount then due, to-wit, $19,325, also running five years, with like interest.  And at the end of that five years, nothing having been paid, a third note was taken in like manner for the amount then due.  She produces the first two notes, and I must confess that those notes almost destroy my faith in her testimony.  They were made five years apart, one at Cleveland, Ohio, and the other in Lincoln, Nebraska.  They are written upon pieces of legal cap paper, which are exactly alike,—apparently taken from the same sheet.  The ink is the same, the writing alike.  Both are dated Lincoln, Nebraska. In both the last figure of the date has been changed.  The first was evidently, as first written, "December 16, 1870," and the other "December 16, 1875," and subsequently changed to "1871" and "1876," respectively.  The deed which was given by Mrs. McConnell for the $12,000 was in December, 1871, and Mr. McConnell commenced business in January, 1872.  Outside of the testimony of experts, a careful personal examination leads me very strongly to believe that both notes were written at the same time, and, of course, such a fact makes very seriously against the truth of her testimony.  I do not doubt that she paid $12,000 in the first instance.  That is shown by other and satisfactory testimony.  Of course, her husband then owed her that amount; but what I do doubt, is her testimony that that debt was, by the mutual understanding of the parties, kept alive as a debt, and, with interest, compounded annually at 10 per cent.  *Seitz* v. *Mitchell,* 94 U. S. 580.  Yet, notwithstanding the very grave doubts that I have, I am constrained to hold that she is entitled to be protected as a creditor on that claim to the extent of $12,000, and 10 per cent. simple interest to date, as well as for the other items of indebtedness testified to by her.  A computation in this man-

ner, instead of compounding the interest annually, shows that she has received property of too great value for her debt. The excess she should be held responsible for. *Clements* v. *Moore*, 6 Wall. 312. The decree, therefore, will be that she holds the moneys received as the proceeds of said judgments in trust for the complainants, and that she pay the same over in 60 days, or that execution issue therefor. If parties cannot agree upon the amount, the clerk is to compute it from the testimony. With reference to the other property, she will be adjudged as holding it as trustee—*First*, for the payment of her own indebtedness computed as above indicated; and, *second*, to the payment of the balance due complainants; and the decree will be that it be sold by a master of this court, and the proceeds applied, first, to the payment of her debt, and the balance to complainants.

### NOTE.

CONVEYANCE FROM HUSBAND TO WIFE. A conveyance to a wife, in payment of a debt owing to her by her husband, is not a voluntary conveyance, nor fraudulent with respect to his other creditors. Gibson v. Bennett, (Me.) 9 Atl. Rep. 727; Heath v. Slocum, (Pa.) Id. 259; Lyon v. Zimmer, note, 30 Fed. Rep. 401; Dice v. Irvin, (Ind.) 11 N. E. Rep. 488; Popendick v. Frobenius, (Mich.) 33 N. W. Rep. 887; Iowa City Bank v. Weber, (Iowa,) 33 N. W. Rep. 606; German-American Seminary v. Saenger, (Mich.) Id. 301; Brickley v. Walker, (Wis.) 32 N. W. Rep. 773; Chapman v. Summerfield, (Kan.) 14 Pac. Rep. 235; Miller v. Krueger, (Kan.) 13 Pac. Rep. 644.

Where there is no evidence of any previous agreement for the repayment of the money, the wife will be held to have no legal claim against the husband therefor, and will not be permitted to appropriate his property, nominally in payment therefor, to the exclusion of his *bona fide* creditors. Jackson v. Beach, (N. J.) 9 Atl. Rep. 380; Hanson v. Manley, (Iowa,) 33 N. W. Rep. 357; Wake v. Griffin, (Neb.) 2 N. W. Rep. 461.

As to the burden of proof in controversies between a married woman and the creditors of her husband, see Brickley v. Walker, (Wis.) 32 N. W. Rep. 773, and note; Burt v. Timmons, (W. Va.) 2 S. E. Rep. 780.

As to fraudulent conveyances between husband and wife, see Foster v. Knowles, (N. J.) 7 Atl. Rep. 295; Milholland v. Tiffany, (Md.) 2 Atl. Rep. 831, and note; Knight v. Kidder, (Me.) 1 Atl. Rep. 142, and note; Platt v. Schreyer, 25 Fed. Rep. 87, and note; Frank v. Humphrey, (Ill.) 12 N. E. Rep. 720; Hooser v. Hunt, (Wis.) 26 N. W. Rep. 442; Farmers' Nat. Bank v. Warner, (Iowa,) Id. 47; Witz v. Osburn, (Va.) 2 S. E. Rep. 33; Webb v. Ingham, (W. Va.) 1 S. E. Rep. 816.