Argued 13 November; decided 9 December, 1901.

### WRIGHT v. CRAIG.

[66 Pac. 807.]

FRAUDULENT CONVEYANCE—CONSIDERATION—BURDEN OF PROOF.

1. Where valuable property has been conveyed to relatives for an apparently inadequate consideration by one who is in debt, and by the conveyance is left practically without anything, the burden of proof is upon the parties to the conveyance to show that the consideration was genuine, adequate and valuable: *Marks* v. *Crow,* 14 Or. 382, and *Mendenhall* v. *Elwert,* 36 Or. 375, applied.

EVIDENCE OF FRAUD.

2. The testimony in this case seems to preponderate to the effect that the transfer in question was made without an intent by the grantee to defraud creditors.

FRAUDULENT CONVEYANCE—ADEQUACY OF CONSIDERATION.

3. To support a conveyance by an insolvent against the claims of creditors the consideration must be adequate, and unless it is shown to be so the property may be ordered sold subject to the actual consideration proved, which will be a first lien: *Morrell* v. *Miller,* 28 Or. 354, applied.

From Union: WM. R. ELLIS, Judge.

Suit by W. T. Wright and S. O. Swackhamer against A. C. and Amelia Craig to set aside a conveyance of certain realty by the former to the latter. There was a decree for the defendants, from which plaintiffs appeal.                    MODIFIED.

For appellants there was a brief and an oral argument by *Messrs. J. M. Carroll,* and *Thos H. Crawford.*

For respondents there was a brief over the name of *Baker & Baker,* with an oral argument by *Mr. J. S. Baker.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is a suit to set aside a conveyance of a tract of land having a hotel building thereon, executed by A. C. Craig to his wife, on the alleged ground that it was voluntary, and made and accepted with the intent and for the purpose of defrauding creditors,—especially the plaintiffs herein. At the time of the trial the husband and wife had been living on the premises for twenty-seven years, and there had been expended $1,500 of the wife's money, left her by a former husband, in the purchase and improvement thereof, the expenditure being made early, as regards the time of their settlement. The record discloses the following facts, which are unquestioned: On November 22, 1888, the plaintiffs and defendant A. C. Craig and others became sureties upon the note of J. B. Eaton, Jr., to the First National Bank of Union. To indemnify them, Eaton gave Swackhamer a mortgage, to foreclose which the bank instituted a suit, and obtained a decree against the makers of the note. The balance remaining due after applying the mortgage proceeds was paid by the solvent sureties, Craig paying nothing thereon. The plaintiffs, Wright and Swackhamer, advanced his (Craig's) proportion to avoid a levy and sale of their property under execution. Within thirty days they filed with the clerk of the court notice of such payment, and claim of contribution and repayment by Craig, and an entry thereof was made in the margin of the docket where the decree was entered. On August 20, 1896, execution was issued to enforce contribution by Craig, and was returned *nulla bona,* except as to $50, which was realized from the levy and sale of an eighty-acre tract of land. An indorsement on the summons in the suit by the bank shows that Craig accepted service thereof on May 27, 1893, but it may have been later, or some time between that

date and the thirty-first. On the latter date Craig conveyed
the property in question to his wife, the deed reciting a con-
sideration of $1. At the trial in the court below, plaintiffs in-
troduced the records relating to the suit by the bank against
Eaton *et al.,* including the execution to enforce contribution,
and the accompanying return, together with the deed executed
by Craig to his wife. It was further shown that at the time of
the conveyance Craig was in possession of the premises, and
had been living thereon with his wife for many years; and Mr.
Swackhamer testified that he supposed Craig was the owner
and solvent at the time the note was executed.

In defense, A. C. Craig testified that $1 was not the real
consideration for the deed, but that it consisted of the payment
by his wife, at his request, of two mortgages upon the prem-
ises, and a mare which she let him have. The mortgages were
payable to George Atkinson and William Wilson, and were for
$1,200 and $700, respectively; and the mare was turned in at
$200. The mortgages were discharged on the record in 1891,—
the latter on January 19, and the former on July 23. On being
asked what agreement, if any, he had with his wife with regard
to making the deed if she would pay off the mortgages, he re-
plied: "At the time she paid the mortgages off, I told her I
would secure her the deed of the place." The conveyance did
not comprise all his property, as he also had the eighty acres
sold under execution, as above noted. Craig further stated that
the especial occasion for making the deed at the time was that
Lindsay Roberts, his wife's son, was going away, and he wanted
him to witness it; that he had no recollection of ever telling
his wife of having signed the note; and that since the payment
of the mortgages the business, as it respects the property con-
cerned, has been conducted in his wife's name. Mrs. Craig
testified that at the time the deed was executed she knew noth-
ing of her husband signing the note, and that the deed was not
accepted for the purpose of defrauding or delaying his cred-
itors; that the consideration paid for the property consisted of
money advanced to satisfy two mortgages, and a mare worth

40 OR.— 13.

$200; that Craig agreed to make the deed if she would pay off the mortgages, that she went with him to Baker City, took the money with her, and paid off the Atkinson mortgage of $1,200 there; that she also paid Atkinson for Wilson $800 in discharge of the latter's mortgage, being the principal and $100 interest; that the money so paid was hers, and that no part of it was furnished by Craig; that she earned it by keeping boarders in the hotel situated on the premises, and cooking for railroad and other people; that the house was run in her name; that she managed it and had full charge of it, paid the bills, hired the help, supplied the provisions, etc.; that Craig had not been well for a good many years, and did nothing, comparatively, to help her; that he was there all the time, and helped what he could, but was not able to do much; that he had gone to market some, but that she kept a hired man to do the work and chores. In rebuttal, Robert Eakin testified, in substance, that, as attorney for the plaintiffs, he instituted the suit for the First National Bank against J. B. Eaton, Jr., *et al.,* and, in pursuance of his employment, obtained from A. C. Craig an admission of service of the summons upon him; that he was somewhat surprised, or appeared to be so, that the suit was being brought on the note, or that there was an attempt made to hold him liable, and there was some talk to the effect that he had assurances he would not be held, and also made some statement in purport that a judgment against him would be "no good," anyway; that he either had conveyed his property to his wife, or would convey it to her, and probably some other talk in regard to it, but the particulars he could not recall. Further on he testified as interrogated: "Q. You don't remember positively whether he said he had deeded the property to his wife, or whether he said he would deed it? A. No; I couldn't say which. He may have said he was about to convey it, or that he had already conveyed it. Q. Did he say he was going to do that to protect her? A. Possibly something to that effect. I don't recollect just what language he used in regard to it; but something to the effect that he was getting old

and life was uncertain, and possibly something more about his affairs with his wife. I don't recollect now."

1.  It will be noted, in the first instance, that the plaintiffs simply introduced the deed from Craig to his wife, reciting a consideration of $1, and the records touching the suit by the bank and the subsequent proceedings, whereby it appeared that the deed was made shortly after the acceptance of the service of summons by Craig; and the question of fraud or want of *bona fides* touching the conveyance, and a purpose to hinder and delay the creditors, is left to inference and presumption. The principal part of Craig's property was thus transferred to his wife, leaving an eighty-acre tract of land in his name, which was afterwards sold for $50; thus rendering him insolvent and without sufficient means with which to discharge his legal obligations. This was quite sufficient, under the circumstances, to shift the burden of proof. It made a *prima facie* case of fraud, and thereafter it devolved upon the wife to show that she took and accepted the conveyance in entire good faith, without purpose of defrauding the creditors of Craig, and for a valuable and adequate consideration. It is not a badge of fraud for a husband to sell and transfer property to his wife; for the husband and wife can now deal with each other, so far as their separate property rights are concerned, as if they were strangers, and where the right exists there can be no impropriety in exercising it. However, by reason of the facility afforded by the relationship of the parties for entering into confidential relations and keeping them secluded from others, such a transaction will be closely scrutinized, and the grantee must exhibit such a case as is wholly consistent with fair dealing. As was held in *Marks* v. *Crow,* 14 Or. 382 (13 Pac. 55),—an analogous case: "Where one who is in debt at the time conveys substantially the whole of his estate to his brother, ostensibly in satisfaction of his debt to the latter, in a suit by creditors to set aside a deed for fraud it is incumbent upon the grantee to establish by satisfactory proof that there was a valuable and adequate consideration for the deed. And, unless he can give a clear and precise account of

the items constituting the alleged debt, a fraudulent intent will be inferred.'' The consideration must not only be valuable, but should also be adequate: 14 Am. & Eng. Ency. Law (2 ed.) , 292. And, generally, see *Jolly* v. *Kyle,* 27 Or. 95 (39 Pac. 999); *Flynn* v. *Baisley,* 35 Or. 268 (57 Pac. 908, 45 L. R. A. 645, 76 Am. St. Rep. 495); *Mendenhall* v. *Elwert,* 36 Or. 375 (59 Pac. 805).

2.   Mrs. Craig denies any knowledge of her husband's indebtedness at the time of the transfer, or any complicity with him in any design that he may have had to hinder or defraud the plaintiffs in the collection of their demand; and there is nothing tangible in the record to gainsay what she asserts. Both she and her husband testify that the money with which the mortgages were discharged belonged to her, and that he agreed, in consideration of their payment, to make her the deed; and this arrangement between them, or the fact of its existence, is nowhere disputed.   The money with which these mortgages were discharged, so far as disclosed by the evidence, was accumulated by Mrs. Craig in carrying on the hotel, or boarding house, as it is sometimes called.   This was conducted by her and in her name.   She incurred the liabilities and discharged them, and received the profits, and there is no circumstance to militate against her right thereto, except that the property belonged to her husband, and they were living together thereon as husband and wife.   She had put her means in the property, however, and he was unable to engage in active employment, and it is quite natural, and not at all improbable, that she should assume charge of the business, and manage and conduct it in her own right; and we must take it as established that she earned the money with which the mortgages were paid.   Craig could allow his wife the use of the property, if he saw fit, so long as it was not done with a fraudulent intent; and it is not charged that he purposed thereby to hinder or delay the plaintiffs in the collection of their demand.   The charge of fraud is confined exclusively to the transfer.   Although accompanied by some suspicious circumstances, and whatever may have been Craig's intention, we

think it appears by a preponderance of the evidence that Mrs. Craig paid off the mortgages, expecting, to obtain title to the property, without knowledge of his indebtedness.

3. But there was a very material matter in connection with the transaction that she did not establish, namely, that she paid an adequate consideration for the property. In this the burden was with her. There is not a word in the record as to the value of the property, and yet it is insisted by the plaintiffs that it will readily sell for $6,000 to $10,000. If such is the case, there was a grave inadequacy of consideration. It is not claimed by the defendants that the $1,500 put into the property by Mrs. Craig at the time of the settlement thereon was part of the consideration for the transfer, and it could not be so considered, in any event, because of the great lapse of time, and the absence of any intent shown to keep the credit alive, if it was ever their purpose to do so: *Fleischner* v. *Bank of McMinnville,* 36 Or. 533, 569 (60 Pac. 603); *Bates* v. *McConnell* (C. C.), 31 Fed. 588. The consideration advanced by Mrs. Craig was, no doubt, valuable; but she could have gone further and shown, if such was the case, that it was also adequate. In not doing this, the fact of adequacy of the price paid is left unproved; and we must assume that there was a manifest disparity between the real value and the price paid, or she would have established the contrary. It was not incumbent on the plaintiffs to show the disparity, although they might have done so; for when they made a *prima facie* case the burden shifted to the defendants to establish the *bona fides* of the sale, against the claims and demands of creditors, and adequacy of consideration is one of the essential elements of such proof. Now, where there is a manifest disparity in the respect alluded to, a court of equity may adopt such specific relief as may be best suited to the exigencies of the case, and, among others, may declare the sale voluntary as to the excess, and allow it to stand as to that which is valuable and real: *Clements* v. *Moore,* 73 U. S. (6 Wall.) 299, 312; *Bates* v. *McConnell,* 31 Fed. 588; *Herschfeldt* v. *George,* 6 Mich. 456; *Strong* v. *Lawrence,* 58 Iowa, 55 (12 N. W. 74); *Lyon* v. *Had-*

*dock,* 59 Iowa, 682 (13 N. W. 737) ; *Boyd* v. *Dunlap,* 1 Johns. Ch. 478. Indeed, the principle has been adopted in this state: *Crawford* v. *Beard,* 12 Or. 447 (8 Pac. 537) ; *Morrell* v. *Miller,* 28 Or . 354 (43 Pac. 490, 45 Pac. 246).

The decree of the court below will therefore be modified, and one here entered setting aside the conveyance from Craig to his wife, and directing that the property be sold to satisfy the plaintiffs demand, subject to the actual consideration paid by Mrs. Craig, with interest at eight per cent. per annum from the date of payment. The amount paid, as shown, was $800 on the Wilson mortgage, January 19, 1891; $1,200 on the Atkinson mortgage, July 22; and the value of the mare, $200. It does not appear when the mare was delivered to Craig, but it must have been prior to any payment upon the mortgages, and interest will be allowed thereon from January 19, 1891. The aggregate of these sums at the rate suggested is $4,009.37. This sum will be declared a lien upon the premises in favor of Mrs. Craig, superior in right and prior in time to the plaintiffs' demand. Plaintiffs to recover their costs and disbursements in both courts. .                                          MODIFIED.