A. B. ELFELT ET AL., RESPONDENTS, *v.* A. H. AND FLORA HINCH, APPELLANTS.

HUSBAND AND WIFE MAY CONTRACT WITH EACH OTHER.—Though Article XV, § 5 of our State Constitution is an innovation upon the common law, it does not abrogate that principle which prevents husband and wife from contracting with each other.

WIFE'S PROPERTY PRIMA FACIE THAT OF THE HUSBAND, WHEN.—Where the wife's separate property is not registered according to the statute, it is *prima facie* the property of the husband rather than of the wife.

FRAUD PRESUMED FROM CIRCUMSTANCES.—Positive and express proof of fraud is not required; it may be deduced from circumstances affording strong presumption.

FRAUDULENT CONVEYANCE—WHAT PRESUMED.—A voluntary conveyance by a husband to his wife will be presumed to be fraudulent as to existing creditors.

PARTIES IN SUIT TO SET ASIDE CONVEYANCE.—Judgment creditors may unite in a suit to set aside such conveyance.

APPEAL from Coos County.

The facts are stated in the opinion of the Court.

*W. R. Willis,* for Appellants.

*W. W. Thayer and Watson & Lane,* for Respondents.

By the Court, PRIM, J.:

This was a suit in equity brought by creditors to set aside a deed to a certain parcel of land situate in Coos County, consisting of about one hundred and forty acres. The respondents were merchants doing business in San Francisco, California, and consisted of six different firms, each of which having obtained a separate judgment prior to instituting this suit, joined as plaintiffs in the court below. They allege that A. H. Hinch was indebted to them for goods, wares and merchandise, sold and delivered to him in October, 1869, except Haake & Co., who, it is alleged, sold their goods, etc., to said Hinch on December 21, 1869. At the time the goods were purchased, A. H. Hinch was in possession and claimed to be the owner of a large amount of property, which he traded to one Nasburg on December

3, 1869, for the tract of land in question, and which was conveyed by said Hinch to Flora Hinch, December 6, 1869. It is sought by this suit to set aside said deed for fraud. The complaint alleges that A. H. colluded with Flora Hinch and executed the deed for the purpose and with the intention of defrauding the respondents out of their debts due from A. H. at the time of the conveyance.

Appellants deny the collusion and fraud, and allege that the conveyance was executed in good faith and for a valuable consideration. It is claimed by them that A. H. was indebted to Flora, at the time of the execution of said deed, in the sum of ten thousand dollars, and that five thousand dollars of said indebtedness was the consideration of the conveyance. If Flora was a *bona fide* creditor of A. H., at the time this conveyance was made to her, there can be no doubt but that he had a right to prefer her as a creditor. This indebtedness, it is claimed, arose out of the sale of a mining claim by A. H., which is asserted to have been the separate property of Flora, and that the property with which he purchased the land in question was a portion of the proceeds of that sale.

In order to determine the fact whether the relation of debtor and creditor existed between these parties at the time the conveyance was made, it will be necessary to look into the evidence bearing upon this point. It appears therefrom that in 1866, A. H. and Flora Hinch were husband and wife, and continued in that relation until May 24, 1869, at which time they were divorced at the suit of the husband. In 1866, and while the relation of husband and wife still existed between them, A. H. owned and was in possession of a mining claim, which he sold to Flora, for the consideration of one hundred dollars. A bill of sale, in the ordinary form, was executed and delivered to her, and placed upon the records of the county. It does not appear that she ever went into the actual possession of the claim, or performed any work upon it. On September 12, 1868, A. H. Hinch, being in the possession of, and claiming to be the owner of the said mining claim, sold it to one John Perschbacker for ten thousand dollars, payable in a

store and goods, etc., and executed a bill of sale for the same in his own name.  Soon after this sale, some question being raised as to the interest of Flora in the mining claim, she appeared before a notary public and acknowledged that the bill of sale, which had been made to her by A. H. Hinch, in 1866, for the said mining claim, was "fully satisfied and discharged."

In the decree of divorce, heretofore alluded to, and which was made after the sale of said mining claim to Perschbacker, it was decreed that all the property of Hinch, both real and personal, was discharged from all the rights, claims and equities of Flora Hinch.

It further appears that the property traded by Hinch to Nasburg, for the land in question, was the proceeds of the mining claim sold to Perschbacker.

While our State Constitution has made an innovation upon the common law, in regard to the property and pecuniary rights of married women, it has not abrogated that principle of the common law which declares husband and wife are to be regarded as one person in law, and cannot contract with each other.  (*Pitman* v. *Pitman,* 4 Or. 298.)  Article XV, § 5, provides that "the property and pecuniary rights of every married woman, at the time of marriage, or afterwards acquired by gift, devise or inheritance, shall not be subject to the debts or contracts of the husband, and laws shall be passed providing for the registration of the wife's separate property."  As to where or how Flora obtained the money with which she purchased the mining claim from her husband, the evidence fails to disclose, and it must be presumed to have been the money of the husband, unless it appears that it came to her either by "gift, devise, or inheritance."  The Legislature has provided that "a married woman, possessed of or owning any personal property or pecuniary rights, may make out a list under oath that the property and rights therein described belonged to her at the time of her marriage, or that she has acquired the same by bequest or inheritance, or by gift of some person named, other than her husband.  And the said list and affidavit shall be recorded in the said register and

shall be *prima facie* evidence of the facts stated therein, and property not so registered shall be deemed *prima facie* to be the property of the husband rather than of the wife." (Mis. L., ch. 35, § 2.)

The fact that Flora Hinch did not have this property registered under the provisions of the statute is of itself and by the statute made *prima facie* evidence that the property was "the property of the husband rather than of the wife." This, taken in connection with the fact that she at no time asserted ownership in the property, but allowed her husband to retain the possession, claiming ownership, and thus obtaining credit upon it, leads us to consider and deem Hinch to have been the owner of it, especially as between her and his creditors. Hinch, in his testimony, says the mining claim was the property of Flora, and that in selling 'it to Perschbacker, and in trading with the proceeds of the sale, he was acting as her agent; but in this he is contradicted by his own acts and the circumstances of the case. There may have been, as between A. H. and Flora, a meritorious consideration for the deed in question; and under the circumstances surrounding the parties to the deed, it might have been a generous and praiseworthy act on the part of the grantor if the rights of other parties had not been involved; but the creditors, we think, had higher claims upon this property. A party must be just before he undertakes to be generous. If there were no creditors in the case as between the parties, a court of equity would probably protect her in this property. As a matter of law, Flora had no interest in the proceeds of the mining claim that she could have asserted against these respondents in their attempts to subject the property to the payment of their debts. Her right to claim the proceeds of the mining claim as her separate property, if it ever existed, had been lost by her acquiescence in his use and disposition of the property. There being no indebtedness shown to have existed in favor of Flora and against A. H. at the time of the execution of the deed, and of the transactions referred to, it must be treated as a voluntary conveyance without any valuable consideration to support it, and must therefore be

presumed to have been fraudulent as against existing creditors.

It not only appears that the respondents were creditors of Hinch at the time this deed was made, but that he was in possession of, and claiming to be the owner of, the very property traded to Perschbacker for the land in question. It further appears that judgments have been recovered by respondents upon their respective claims, and that executions issued thereon have been returned *nulla bona*. Unless this land can be subjected to the payment of said judgments, the respondents are without remedy and cannot collect their demands.

It is, however, insisted by counsel that fraud is never presumed, but must be proved. While it is true that both at law and in equity fraud cannot be presumed, but must be proved, yet in neither court is positive and express proof of fraud required, but each deduces it from circumstances affording strong presumption. "Courts of equity will act upon circumstances as presumptions of fraud established by presumptive evidence, which courts of law would not always deem sufficient proof to justify a verdict at law." (1 Story Eq. Jur., § 190.)

In the case under consideration the fact that the conveyance was without a valuable consideration to support it, and executed by Hinch at a time when he was largely indebted to respondents, and the further fact that he had no other property out of which their debts could be made, are circumstances from which a court of equity will infer or presume constructive fraud. In *Read* v. *Livingstone* (3 John. Ch. 500), Chancellor Kent said: "The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement or repel the legal presumption of fraud,"

1 Story Equity Jurisprudence (§ 355) says: "Voluntary conveyances are unquestionably protected by the statute in all cases where they do not break in upon the legal rights of creditors; but when they break in upon such rights, and

so far as they have that effect, they are not permitted to avail against those rights. If a man, therefore, who is indebted, conveys property to his wife or children, such a conveyance is, or at least may be, within the statute; for although the consideration is good as between the parties, yet it is not in contemplation of law *bona fide,* for it is inconsistent with the good faith which a debtor owes to his creditors to withdraw his property voluntarily from the satisfaction of their claims, and no man has the right to prefer the claims of affection to those of justice."

Decree affirmed.