Argued February 12; decided April 1, 1895.

## JOLLY *v.* KYLE.

[39 Pac. 999.]

1. FRAUD—INTENTION OF PARTIES—CONVEYANCE TO RELATIVES.—To render fraudulent a conveyance from a grantor who is insolvent or in failing circumstances there must be an intent by both the grantor and grantee to defraud creditors. Such transactions are always closely scrutinized when they are between relatives, but if they are genuine they will be sustained.

2. PREFERENCE AMONG CREDITORS OF INSOLVENT DEBTOR—CONSTRUCTIVE FRAUD.—An insolvent or failing debtor may lawfully prefer creditors by either sale or pledge of specific property, (*Sabin* v. *Columbia Fuel Company*, 25 Or. 15, and *Currie* v. *Bowman*, 25 Or. 364, cited and approved,) unless he reserves to himself some secret benefit, in which case the transfer will be constructively fraudulent.

3. FRAUD—AGREEMENT TO SUPPORT PARENTS.—A conveyance between relatives, upon an adequate and sufficient consideration and without intention to defraud the grantor's creditors, is not rendered invalid by the fact that the grantees have gratuitously assumed the burden of supporting the grantor, to whom they owe a moral duty.

APPEAL from Washington: THOS. A. McBRIDE, Judge.

This is a suit to set aside a deed, and subject the real property therein described to the payment of the grantor's debts. The facts are that the defendant, R. M. Kyle, being indebted to William Jolly and W. B. Jolly in the sum of five hundred dollars, he and his father, the defendant S. M. Kyle, on December sixth, eighteen hundred and eighty-two, executed and delivered to said creditors a promissory note for that amount, payable in two years, with interest at the rate of ten per cent. per annum, and that W. B. Jolly assigned all his interest in said note to William Jolly. At the time the note was executed S. M. Kyle was the owner in fee simple and in possession of a tract of land in Washington County containing one hundred and twenty acres, which he, on August twenty-fourth, eighteen hundred and eighty-five, for the expressed consideration

of one thousand two hundred dollars, conveyed by quitclaim deed to his sons, the defendants Charles M. and John W. Kyle, who, as a consideration therefor, assumed and paid an indebtedness of one thousand dollars and interest, secured by a mortgage upon said real property, and assumed and paid another debt of two hundred dollars and interest, which their father owed to one W. Simmons. The quitclaim deed was duly recorded on the day it was executed, and the grantees entered into possession of said premises, but their father, who was quite aged and infirm, and their mother, who was blind, continued to occupy an old log house thereon. S. M. Kyle, at the time he executed the deed, also sold and delivered to his said sons Charles M. and John W., in consideration of two hundred and seventy-two dollars, all his personal property, since which time he has been wholly insolvent. On September third, eighteen hundred and ninety-two, William Jolly died testate, and his last will having been admitted to probate, the plaintiffs were appointed executors thereof, and duly qualified as such. On November twenty-eighth, eighteen hundred and ninety-two, the said note not having been paid, the plaintiffs, by consideration of the circuit court of said county, obtained a judgment against the makers thereof for nine hundred and ninety-nine dollars and the costs and disbursements of the action, and on December thirteenth of that year an execution was issued upon said judgment and delivered to the sheriff of said county, but that officer being unable to find any property belonging to either of the defendants in the writ upon which he could levy, on the twenty-fourth of that month returned it wholly unsatisfied. The plaintiffs allege that the defendants R. M. Kyle and S. M. Kyle are insolvent, and that said deed was made and accepted without any consideration therefor, and with a fraudulent intent on the part of the grantor and grantees to prevent

the collection of the debt which is the subject of this suit, and with knowledge of said insolvency. The defendants Charles M. and John W. Kyle, after denying any fraudulent intention, allege that they paid the full value of said land, and also undertook and agreed to maintain, support, and care for their parents from the time the deed was executed until their death, which agreement they have kept and are willing to perform, thereby necessitating a great outlay of money. The reply having put in issue the allegations of new matter contained in the answer, the cause was referred to William McQuillen to take and report the evidence with his findings of fact and law thereon.

While the evidence was being taken, the defendants Charles M. and John W. Kyle filed with the referee an amended answer, in which they allege that the agreement to support their parents was gratuitous, and formed no part of the consideration for said conveyance. The referee having taken the evidence found the facts as above detailed, and, also that the land in controversy was of the value of two thousand four hundred dollars at the time the deed was executed; that said deed was made by S. M. Kyle and accepted by Charles M. and John W. Kyle with knowledge of the insolvency of R. M. and S. M. Kyle, and with the intent of preventing the creditors of S. M. Kyle from having said land applied to the satisfaction of their demands; that Charles M. and John W. Kyle paid one thousand and fifty-six dollars on the mortgage debt and two hundred dollars to Simmons, and also agreed to support and maintain their parents during their natural lives; that the said grantees had made permanent improvements upon the premises, which, together with the sums paid as the consideration therefor, amounted to two thousand seven hundred and thirty dollars; and as conclusions of law found that the premises should be

sold, and the proceeds thereof applied as follows: 1. To the payment of the amount found due the defendants Charles M. and John W. Kyle; 2. To the payment to plaintiffs of the amount due on their judgment; and, 3. The remainder, if any, to be paid to the defendants, Charles M. and John W. Kyle. The court having affirmed said report rendered a decree accordingly from which the defendants appeal.        REVERSED.

For appellants there was a brief and an oral argument by *Mr. Dell Stuart.*

For respondents there was a brief and an oral argument by *Mr. Thomas H. Tongue.*

Opinion by MR. JUSTICE MOORE.

1. The defendants contend that in the transaction complained of there was no intention to hinder, delay, or defraud the creditors of S. M. Kyle; that the full value of the premises was paid; that the agreement to support and maintain their parents was gratuitous, and that a conveyance made under such circumstances should not be set aside at the suit of the grantor's creditors. An insolvent debtor is not prohibited from selling and conveying his property, and his deed will not be set aside at the suit of his creditors unless it appears that at the time the conveyance was executed he intended to hinder, delay, or defraud them. And even though the grantor may have intended to defraud his creditors, yet the deed cannot be annulled, when his grantee has paid a full consideration, unless it also appears that, having full knowledge of his grantor's fraud, the grantee was a party to and participated in it: Bump on Fraudulent Conveyances, 194. The grantee who would successfully resist a suit to set aside a deed made to him with intent to defraud the creditors

of his grantor must be able to show that he is an inno-
cent purchaser, for a valuable consideration, and without
knowledge or notice of his grantor's fraud; for if the
transaction is not in good faith, it is void as to credit-
ors, although the grantee has paid a full consideration.
The intent of the grantor and grantee at the time the
conveyance was executed is therefore the first question to
be considered in ascertaining the *bona fides* of the parties,
when a deed or other instrument transferring or encum-
bering property, is assailed for fraud.   Conveyances from
one relative to another, when attacked by the creditors of
the grantor, will always be closely scrutinized, for from
the very relation of the parties it is scarcely to be sup-
posed that the circumstances and intention of the grantor
were not known to the grantee: *Castro* v. *Illies,* 22 Texas,
479 (73 Am. Dec. 277).   An agreement of the grantee to
support the grantor furnishes evidence tending to show
that the property conveyed was of greater value than
the sum paid, and that there was a secret trust to that
extent for the benefit of the grantor: *Albee* v. *Webster,* 16
N. H. 362.   So too, a transfer of all the property of a
debtor, not being an ordinary transaction, is therefore a
badge of fraud: Bump on Fraudulent Conveyances, 34;
Wait on Fraudulent Conveyances, § 231.

The intention of the parties is to be inferred by apply-
ing these rules to the evidence, which shows that in May,
eighteen hundred and eighty-five, the defendant R. M.
Kyle, the principal debtor, represented to his father and
brothers, the other defendants, that he had deposited with
the plaintiff, F. B. Jolly, certain notes and accounts amount-
ing to nearly seven hundred dollars, with instructions to
collect the same and apply the proceeds to the payment
of the Jolly note; that he had a large quantity of lumber
with which he would further secure its payment, and that
they need not give themselves any uneasiness about the

note, as he would settle and pay it off. It also appears that he did actually deposit some notes and accounts with F. B. Jolly for collection, but that they were nearly valueless, and but a very small sum was realized therefrom, and that he had about one hundred thousand feet of lumber at that time, but he neither sold nor mortgaged any of it to Jolly, and before the said deed was executed he had sold it all to other parties. The defendants S. M. Kyle, Charles M. Kyle, and John W. Kyle each testify that the deed in question was executed and accepted by the parties thereto under the belief that the said representations of R. M. Kyle were true, and that the Jolly note had been paid. The evidence also shows that William Jolly lived about twelve miles from the defendants, and that neither of them made any inquiry of him about the payment of said note. The fact that the parties to said deed, knowing the Jolly debt once existed, executed and accepted the conveyance without making any inquiry about its payment, would show, under ordinary circumstances, that they did not exercise that degree of caution required of prudent men in ordinary business affairs, and tends to raise an inference that a full consideration had not been paid for the property: Bump on Fraudulent Conveyances, 200. But it must be remembered that confidence in the representations of relatives is a family weakness and a human virtue; and when it is considered that the Jolly note, in May, eighteen hundred and eighty-five, amounted to only about six hundred and thirty dollars, and that R. M. Kyle had deposited with F. B. Jolly notes and accounts the nominal value of which exceeded that sum, and also agreed to furnish further security, it is not strange that the defendants believed and relied upon these representations, and explains the reason for not making any inquiry of William Jolly about the payment of the note. The deed having been recorded on the day it was executed,

and the grantees having entered into possession of the premises, tends to confirm us in the belief that there was no actual fraud intended by either of the parties to said conveyance.

2. The question of actual fraud having been eliminated from the case, the question of constructive fraud remains, as to whether the defendants Charles M. and John W. Kyle paid the full consideration for the property. A debtor in failing circumstances, who has not sufficient property or means to liquidate all his debts, may in good faith prefer a creditor, and sell and convey his property to him in payment of a debt, or pledge or mortgage it as security therefor: *Elfelt* v. *Hinch,* 5 Or. 255; *Sabin* v. *Columbia Fuel Company,* 25 Or. 15 (42 Am. St. Rep. 756, 34 Pac. 692); *Currie* v. *Bowman,* 25 Or. 364 (35 Pac. 848). And a debtor, having the right to prefer certain creditors, is not required, in the exercise of that right, to convey his property directly to such creditor, but he may transfer it to a third person, and pay the proceeds to his preferred creditors: *Priest* v. *Brown,* 100 Cal. 626 (35 Pac. 323). A conveyance is not fraudulent because the debtor has transferred his property with a view to prefer one creditor to another, but the fraud is in the intention to prefer himself to all creditors: Bump on Fraudulent Conveyances, 205. All property that is not exempt from execution is, in equity, pledged by the debtor to his creditors for the payment of his debts; and when a debtor, as a part of the consideration for a conveyance, secretly secures to himself any substantial interest or benefit to be derived from the estate granted, such conveyance is constructively fraudulent. "If a debtor in failing circumstances," says AMES, J., in *Rice* v. *Cunningham,* 116 Mass. 466, "makes a conveyance of his property, purporting on its face to be absolute and without reservation, and at the same time there is a concealed agreement between the parties to it,

inconsistent with its terms, intended to secure a benefit or advantage to the grantor at the expense of those whom he owes, a trust thus secretly created is a fraud upon creditors, because it places the right of possession beyond their reach."

3. If the conveyance was made in good faith, and the grantees paid the full consideration, the agreement to support their parents would not avoid the deed; but if the transaction was intended by the parties to it as a means of securing the property of the vendor from his creditors, and appropriating it to the use of himself and his family, the amount paid, even if it was more than the full value of the property, would be immaterial. If the amount paid forms an adequate and sufficient consideration for the property, so that if it stood alone the sale would be valid against creditors, and there has been no intention to defraud them, the mere fact that the grantees have gratuitously assumed the burden of supporting the grantor, to whom they owed a moral duty, will not avoid the sale: *Albee* v. *Webster,* 16 N. H. 362; *Slater* v. *Dudley,* 18 Pick. 373; *Farlin* v. *Sook,* 30 Kan. 401 (46 Am. Rep. 100, 1 Pac. 123); Bump on Fraudulent Conveyances, 215.

Having reached the conclusion that there was no intention to defraud the creditors of S. M. Kyle, the question under discussion is narrowed to the value of the property at the time the conveyance was made, and whether the defendants Charles M. and John W. Kyle paid the full value thereof. The evidence shows that the land in question had been covered with timber, but at the time the deed was made it had been cut from about twenty acres, from about two acres of which,—used for an orchard but not plowed,—the timber was removed, and also from a portion thereof which had been cultivated containing about six acres; but the logs and stumps were allowed to encumber the remainder of the twenty-acre tract, upon

which hay was grown. An old log house containing four rooms, a small barn, and some fencing, constituted the other improvements that had been made upon the place at that time. It was not situate upon any public road, and the defendant S. M. Kyle was obliged to pass over the lands of others in going to or from it. A canyon about twenty-five or thirty feet deep also extended through the tract rendering it more or less uneven. The opinion of the witnesses as to the value of the premises in August, eighteen hundred and eighty-five, varies from eight dollars to sixty dollars per acre. The plaintiff called two witnesses to prove the value of the land, one of whom said it was worth from thirty dollars to forty dollars and the other from fifty dollars to sixty dollars per acre, though the veracity of the witness who gave the larger value is questioned. The defendants called sixteen witnesses upon this question, one of whom testified that the land was worth from twenty dollars to twenty-five dollars per acre "at most." Robert Walker, whom the record shows is reputed to be the wealthiest man in that county, and one who has had much experience in buying and selling land in that vicinity, and knew its value, said it was worth ten dollars per acre, and he is corroborated in this opinion by the testimony of five others. The opinions of the other witnesses vary from eight dollars to fifteen dollars per acre. The evidence also shows that in eighteen hundred and eighty-five there was not much demand for land in that vicinity no better improved than this; that the defendant Charles M. Kyle owned a tract adjoining that in question, containing forty acres, which in eighteen hundred and eighty-six he offered at ten dollars, and the next year sold for fifteen dollars per acre, to raise money to pay off the said mortgage and the other obligation he and his brother had assumed. From a careful examination of the evidence we are forced to conclude that in

August, eighteen hundred and eighty-five, the land was not worth two thousand four hundred dollars, as found by the referee, nor more than the amount paid by the defendants Charles M. and John W. Kyle, and that their agreement to support their parents was gratuitous, formed no part of the consideration, and was prompted by a desire to care for a blind mother whose helplessness, and for a father whose age and infirmities appealed to their sympathy. It follows from these conclusions that the decree must be reversed and the complaint dismissed, and it is so ordered.      REVERSED.