Decided 10 July, 1899.

## FLYNN *v.* BAISLEY.

[57 Pac. 908, 45 L. R. A. 645.]

1. VOLUNTARY CONVEYANCE—CONSTRUCTIVE FRAUD.—A conveyance of land made by a debtor without a valuable consideration is *prima facie* fraudulent as to creditors: *Davis* v. *Davis,* 20 Or. 78, cited.

2. PARENT AND CHILD—DEBTOR AND CREDITOR.*—The earnings of a minor child who has been in good faith emancipated by the father cannot be taken by the latter's creditors.

3. EVIDENCE OF EMANCIPATION OF CHILD.—A writing is unnecessary to evidence the emancipation of an infant, that fact may be implied from circumstances.

4. INFANTS—FRAUDULENT CONVEYANCES.—Where a father in good faith emancipates his sons while he is in good financial circumstances, and thereafter borrows money from them, which they earned during their minority, a conveyance of real estate by the father to the sons in consideration of such loans is a conveyance upon a valuable consideration, and will not be set aside.

From Baker: ROBERT EAKIN, Judge.

Suit by J. F. Flynn against S. B. Baisley and others to set aside a deed, and to subject a part of the real property described therein to the lien of a judgment against the grantor. From a decree dismissing the suit, plaintiff appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *John L. Rand* and *Hyde & Packwood,* with an oral argument by *Mr. Rand.*

For respondents there was a brief over the name of *Butcher & Eastham,* with an oral argument by *Mr. W: F. Butcher.*

---

*NOTE.—See note, Rights of Creditors in Personal Services of Debtor Subjecting Earnings Not yet Due, with case of *Mayers* v. *Kaiser,* 21 L. R. A. 623; same case in 39 Am. St. Rep. 849 with note, Loans From Husband to Wife.

See also note, Father's Right to Services of Child, in 62 Am. St. Rep. at p. 38.
                                        —REPORTER.

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit to set aside a deed, and to subject a part of the real property described therein to the lien of a judgment against the grantor. It is alleged in the complaint that on July 1, 1893, the defendant S. B. Baisley executed to the Baker City National Bank his promissory note for the sum of $3,588, payable six months after date, with interest at the rate of ten per cent. per annum; that plaintiff thereafter became the owner thereof, and on March 6, 1898, recovered judgment thereon, upon which an execution was issued, and returned wholly unsatisfied; that at the time said note was executed Baisley was the owner in fee of the south ½ of the southeast ¼ and the southeast ¼ of the southwest ¼ of section 15, in township 7 south, of range 38 east of the Willamette Meridian; the west ½ of the southeast ¼ of section 25, the south ½ of section 26, the east ½ and the northwest ¼ of section 35, in township 8 south, of range 39 east of said meridian, in Baker County,—containing one thousand acres, more or less; that on December 1, 1894, Baisley and wife, for the expressed consideration of $6,000, executed to their sons, Perry A. and J. H. Baisley, a general warranty deed of said property; that no consideration was paid for the conveyance; that it was executed with intent to hinder, delay, and defraud the creditors of S. B. Baisley; that the premises therein described were then of the reasonable value of $10,000; and that Baisley had no other property out of which plaintiff's judgment, or any part thereof, can be satisfied. The answer denies the material allegations of the complaint, and avers that S. B. Baisley, on December 1, 1894, was indebted to Perry A. and J. H. Baisley in the sums of $500 and $125, respectively, in consideration of which, and of their payment of the sum of $25,

and agreement to discharge the principal of two mortgages to secure the sums of $3,350 and $2,000, executed to them a deed of the north ½ of lot 3 and the south 30 feet of lot 4 in block 4 in the United States townsite of Baker City, the east ½ of section 35, in township 8 south of range 39 east, and an undivided one-tenth in fee and a dower interest in the other property described in the complaint, for which he received an adequate consideration. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree dismissing the suit, and plaintiff appeals.

It is contended by plaintiff's counsel that the evidence shows that the conveyance was voluntary, and that, Baisley being indebted to plaintiff's assignor at the time it was executed, the court erred in dismissing the suit. The evidence shows that on December 1, 1894, said lots in Baker City, together with a building thereon, known as "Meier's Hotel," were incumbered with a mortgage executed by Baisley and wife to the Baker City National Bank, to secure the sum of $3,350 ; that the east ½ of section 35 in township 8 south of range 39 east, was subject to a mortgage executed by them to the Lombard Investment Company, to secure the sum of $2,000, and that such incumbrance on the hotel property was also a second lien thereon, but that the undivided one-tenth of the other tracts, equivalent to sixty-eight acres, was unincumbered; that the grantees in said deed sold the lots in Baker City some time in 1896, for the sum of $3,000, in consideration of which, and the further sum of $50, said bank entered satisfaction in full of its mortgage, thereby relinquishing the sum of $757.58, and releasing the east ½ of said section 35 from the lien thereof ; that they paid the interest and $300 of the principal due upon said Lombard Investment Company's mortgage, and secured an extension of two years for the payment of the remainder ; that

when said deed was executed to them they were aged twenty-one and nineteen years, respectively ; that Perry, being permitted by his father to labor on his own account during the latter years of his minority, and to retain his earnings, operated a boarding house at the gold mines in said county, and was thereafter employed as a book-keeper in the Baker City National Bank, whereby he accumulated the sum of $500, which he loaned to his father prior to the execution of the deed; that J. H. Baisley labored under the same privileges and conditions as his brother, and earned $125 during his minority, which he loaned to his father, and which the latter owed him at the time the deed was executed. It is argued by plaintiff's counsel that this money belonged to the father, and.that his being indebted at that time constituted it a trust fund for the benefit of his creditors, and, this being so, the conveyance, as to that part of the consideration, was voluntary. This must depend upon whether Baisley had in good faith emancipated his sons before they earned the money.

1. A conveyance of lands without a valuable consideration, by one who is indebted at the time, is presumptively a fraud upon his creditors, who have an equitable right to set it aside or to avoid it, at least to the extent of the debts due them : *Elfelt* v. *Hinch*, 5 Or. 255 ; *Davis* v. *Davis*, 20 Or. 78 (25 Pac. 140); *Sterry* v. *Arden*, 1 Johns. Ch. 261.

It being the duty of an infant to labor for his parent in consideration of the latter's furnishing him maintenance and education, it has been held that a deed of land executed by an insolvent parent to his infant child in consideration of services rendered or to be rendered during his minority is voluntary, and void as to creditors of the grantor: *Swartz* v. *Hazlett*, 8 Cal. 118 ; *Stumbaugh* v. *Anderson*, 46 Kan. 541 (26 Pac. 1045) . A

father, who was insolvent, having made a deed to his minor son in consideration of wages earned and a note executed by him, it was held that the conveyance was voluntary, and void as to the grantor's creditors : *Winchester* v. *Reid*, 53 N. C. ( 8 Jones, Law ), 377. In *Bell* v. *Hallenback*, Wright (Ohio), 752, it is held that if a father, who at the time is indebted, invests the earnings of the minor children in real estate, and takes the title in their names, the premises will be charged with the debts he then owed. In *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999), it is said : ''Conveyances from one relative to another, when attacked by the creditors of the grantor, will always be closely scrutinized, for, from the very relation of the parties, it is scarcely to be supposed that the circumstances and intention of the grantor were not known to the grantee.'' To the same effect see, also, *Burt* v. *Timmons*, 29 W. Va. 441 (2 S. E. 780); *Shober* v. *Wheeler*, 113 N. C. 370 (18 S. E. 328).

2. Where, however, the parent has in good faith emancipated his minor child, and relinquished all right to his earnings, his creditors cannot reach earnings thereafter acquired by such minor to apply them in payment of the parent's debts : 17 Am. & Eng. Enc. Law (1 ed.), 379. In *Jenney* v. *Alden*, 12 Mass. 375, a father, who was in good financial circumstances, having agreed that his minor son should have the benefit of his own wages, the latter sent his earnings from time to time to his father, who invested them in real property, taking the title in his son's name ; and the father thereafter becoming insolvent, it was held that the property was not liable for the payment of his debts. In *Atwood* v. *Holcomb*, 39 Conn. 270 (12 Am. Rep. 386), it is held that a father, acting in good faith, may make a valid gift to his minor son of his time and future earnings, although insolvent at the time. In *Clemens* v. *Brillhart*, 17 Neb. 335 (22

N. W. 779), Mr. Justice MAXWELL says : "Creditors have no vested rights in the future earnings of the minor children of the debtor." "A son," says Mr. Justice BLACK in *McCloskey* v. *Cyphert*, 27 Pa. St. 220, "is bound to render obedience to his father until he is twenty-one years of age. The father may employ him about his own business without paying him wages, or hire him out, and appropriate his earnings, if he sees fit. But he may also let him go free from his service whenever he chooses. If he happens to be in debt, he is not bound to work his son or daughter as he would work a horse or slave for the benefit of his creditors." To the effect that the right of a parent to the labor of his child during its minority is personal, and that, though insolvent at the time, he may, for the best interest of the child, emancipate him, and, as a consequence, place his earnings beyond the reach of his creditors, see *Donegan* v. *Davis*, 66 Ala. 362 ; *Shortel* v. *Young*, 23 Neb. 408 (36 N. W. 572); *Beaver* v. *Bare,* 104 Pa. St. 58 (49 Am. Rep. 567); *Wambold* v. *Vick*, 50 Wis. 456 (7 N. W. 438); *Lackman* v. *Wood*, 25 Cal. 147 ; *Wilson* v. *McMillan*, 62 Ga. 16 (35 Am. Rep. 115).

3.    A writing is unnecessary to evidence the emancipation of an infant, it having been held that his liberation may be established by direct evidence or implied from circumstances : Wood, Mast. & Serv. §. 25 ; *Dierker* v. *Hess*, 54 Mo. 246 ; *Monaghan* v. *School Dist.*, 38 Wis. 100 ; *Wilson* v. *McMillan*, 62 Ga. 16 (35 Am. Rep. 115). Nor is it necessary that the infant should abandon his home, or turn his parent out of doors, to afford proof of the latter's relinquishment of his earnings. "The emancipation of the son from the father's control," says Mr. Justice BLACK, in *McCloskey* v. *Cyphert*, 27 Pa. St. 220, "may be as perfect when they both live together

under the same roof as if they were separated. The father's renunciation of all legal right to the son's labor is not less absolute because other family ties continue unbroken, and the son's security in his rights of property would not be at all increased by turning his father out of doors.'' To the same effect, see *Donegan* v. *Davis*, 66 Ala. 362; *Johnson* v. *Silsbee*, 49 N. H. 543; *Penn* v. *Whitehead*, 17 Grat. 503 (94 Am. Dec. 478); *Beaver* v. *Bare*, 104 Pa. St. 58 (49 Am. Rep. 567).

4.   Considering the facts of the case at bar in the light of these decisions, we think the evidence shows that Baisley in good faith emancipated his sons while he was in good financial circumstances, and that they thereafter earned the money which they loaned to him, and which formed a part of the consideration for the deed.   The books of the Baker City National Bank, being offered in evidence, showed that Perry had deposited money in said bank from time to time, until his account exceeded $500, against which he drew for that amount, and loaned it to his father, who had not repaid the same when the deed was executed.   The evidence of the manner in which J. H. Baisley earned the money which he loaned to his father is not so clear; but, the sum being small, it was probably not considered so important.   No testimony was introduced by the plaintiff, however, tending to show that he had not earned or loaned it.   S. B. Baisley, being indebted to his sons on a *bona fide* claim in the sums named, though also indebted to others at the time, had a right to prefer them if he did not reserve to himself some secret benefit (*Jolly* v. *Kyle*, 27 Or. 95, 39 Pac. 999), and we think there is no evidence tending to show that such was the case.   True, he exchanged labor with them, and helped them to make hay on a part of the land conveyed, performing about one and one-half months' work for them in four years, but the evidence fails to show that

he derived any secret benefit therefrom, and it must be inferred that the sons' labor for him in return was an adequate compensation therefor.

The lower court found that at the time of the conveyance the lots in Baker City were worth from $2,000 to $2,500, and that the other land was worth $9 per acre. There being three hundred and eighty-eight acres of the latter, if the value of the lots be estimated at $2,500, the aggregate value of the property conveyed would be $5,992. While there is some conflict in the testimony as to the value of the land on December 1, 1894, we think the court found the full value thereof, considering the great financial depression prevailing at that time. It will be remembered that in 1896 the receiver of the Baker City National Bank released a second mortgage on the east $\frac{1}{2}$ of section 35, relinquishing the sum of $757.58. This tract was then subject to the Lombard Investment Company's prior mortgage of $2,000, and from the satisfaction of the second mortgage it must be inferred that the receiver considered it of no greater value than the amount of such prior incumbrance, or $6.25 per acre. The evidence also shows that this tract is the most valuable portion of the whole premises conveyed. S. B. Baisley was the owner of a dower interest in the tracts of which he was seised of an undivided one-tenth interest, but, the person for whose life he held such estate having died soon after the conveyance to his sons, the value thereof is not computed ; but, if it were, we nevertheless think that an adequate consideration was paid for the conveyance, and hence it follows that the decree is affirmed.                          AFFIRMED.