Argued 7 December, 1899; decided 29 January, 1900.

## MENDENHALL v. ELWERT.

[52 Pac. 22, 59 Pac. 805.]

1. SUFFICIENCY OF NOTICE OF APPEAL.—A decree was rendered allowing plaintiff to recover distinct amounts from certain named defendants, and setting aside deeds to certain property. The notice of appeal in describing the amount due from one of the defendants erroneously stated the day from which interest on the amount was to be computed, and failed to allude to the costs recovered. It also failed to designate one of the parties defendant, but recited that the decree was given in favor of the plaintiff, and against the defendants, and each of them. In describing the property to be conveyed, it failed to mention one lot, but the notice accurately stated the date on which the decree was given. *Held*, that under Hill's Ann. Laws, § 537, subd. 1, providing that the notice should state that appellant appeals from the judgment or decree, or some specified part thereof, the notice was sufficient.

2. FILING NEW APPEAL BOND.—The rule that an appellant cannot, under Hill's Ann. Laws, § 537, subd. 4, obtain leave to file a new undertaking on appeal without making it appear to the satisfaction of the court that the failure to file a sufficient undertaking within the time allowed by law was occasioned by his unavoidable or excusable mistake, applies only to some patent omission in the execution of the instrument and not to a difference of opinion as to what constitutes a performance of the statutory requirements: *Pencense* v. *Burton*, 9 Or. 178, and *DeLashmutt* v. *Sellwood*, 10 Or. 51, distinguished.

3. RIGHT OF DEBTOR TO PREFER CREDITORS—BURDEN OF PROOF.—It is now settled in Oregon that a debtor may prefer a creditor and in so doing may

transfer to him all his property; and the knowledge by the creditor that the debtor is in failing circumstances and that he has other creditors who will be left without payment of their claims will not affect such creditor's right to accept a transfer or mortgage of all or any part of the debtor's property, in the absence of an intent by such creditor to hinder, delay or defraud other creditors; but, if the debtor transfers property to a relative to the exclusion of his creditors, the burden of proof rests upon the parties to the conveyance of showing that the transfer was made in good faith and for a valuable consideration.

4. FRAUDULENT CONVEYANCE.—Defendant transferred to her son, a co-defendant, in settlement of alleged advances, property and securities aggregating $125,000, which defendant's evidence tended to show were the property of her son, which she had loaned and managed for him, having lost her own fortune of $50,000 in speculation. Said son testified that he made this sum in speculation from about $11,000, and that all correspondence relating to the transaction with his mother had been destroyed. Defendants failed to support their testimony with any written evidence of these transactions, and there was evidence that defendants had made statements that the property belonged to the mother. *Held*, that the evidence was insufficient to sustain the burden of proving the *bona fides* of the several transactions as against creditors of the mother in a suit to set aside the transfer as fraudulent.

5. BURDEN OF PROOF—SUPPRESSED EVIDENCE.—The duty of producing material evidence rests on the party who has control of it, and he can either produce it or submit to the inferences that may be drawn from its nonproduction: *Shmit* v. *Day*, 27 Or. 110, applied.

From Multnomah : LOYAL B. STEARNS, Judge.

Suit by Edw. Mendenhall against Mrs. J. B. Elwert and her son, and daughter, to set aside certain conveyances from Mrs. Elwert to her son, and for general equitable relief. There was a decree as prayed for, from which the defendants appealed. Plaintiff's motion to dismiss the appeal was overruled, and the decree of the lower court upheld.        AFFIRMED.

Decided 7 February, 1898.

ON MOTION TO DISMISS APPEAL.

[52 Pac. 22.]

*Mr. Martin L. Pipes*, for the motion.

*Mr. Dell Stuart*, contra.

PER CURIAM. 1. This is a motion to dismiss an appeal. The facts pertinent to the inquiry are that on June 19, 1897, the trial court decreed that plaintiff re-

cover from the defendants J. B. and Carrie M. Elwert the sum of $485.50, with interest from September, 1896, and $15.50, as costs and disbursements, being the amount of a judgment obtained by him against them in the Circuit Court of Multnomah County ; that he recover from Carrie M. Elwert the sum of $242.10, with interest from April 19, 1896, and $17.10 as costs and disbursements, being the amount due on a judgment obtained by him against her in a justice's court of said county, a transcript of which had been duly filed in the proper office within the time prescribed by law, so as to make it a judgment of said circuit court ; that he recover from the defendants J. B., Carrie M., and C. P. Elwert his costs and disbursements in this suit, taxed at $147.80 ; that a deed executed by J. B. to C. P. Elwert, March 12, 1894, conveying lot 4 and the south five feet of lot 3 in block 218 in the City of Portland, and a deed executed by Carrie M. to C. P. Elwert, conveying lot 5 in block 2 in the City of East Portland, and lots 2 and 3 in block 72 in Caruthers' Addition to the City of Portland, be canceled; and that an assignment of certain notes and mortgages severally made by J. B. and Carrie M. to C. P. Elwert, and a chattel mortgage executed by Carrie M. to the same person, be set aside.    The notice of appeal, omitting the title, address, and signatures, is as follows :  "You will please take notice that the defendants, and each of them, in the above entitled suit, hereby appeal to the supreme court of this state from the judgment, order, and decree against J. B. Elwert and Carrie M. Elwert for $470 and $15.50, and against Carrie M. Elwert for the further sum of $242.10, the first with interest from September 8, 1896, and the second with interest from April 9, 1896, and for costs taxed at $170.20 in this suit ; said decree also setting aside a deed made by J. B. Elwert to C. P. Elwert, dated March 12, 1894, conveying lot 4 and south five feet

of lot 3 in block 218, City of Portland ; also setting aside deed from Carrie M. Elwert to C. P. Elwert, dated March 7, 1896, conveying lots 2 and 3 in block 72 in Caruthers' Addition to Portland ; and also setting aside the transfers and assignments of notes and mortgages to said C. P. Elwert, mentioned in said decree and the complaint of plaintiff, and decreeing some and all of said conveyances and transfers in fraud of creditors of J. B. Elwert and Carrie M. Elwert—said decree therein made and entered in the said circuit court, on the 19th day of June, 1897, in favor of the plaintiff in said suit, and against said defendants and each of them, and from the whole thereof."

It is contended by plaintiff's counsel that this notice does not describe the decree of which the defendants complain with the degree of certainty necessary for identification, and hence does not confer upon this court jurisdiction of the cause. It will be observed that, in referring to the amount recovered by plaintiff from J. B. and Carrie M. Elwert, it is stated therein to be $470 and $15.50, the sum of which is $485.50, the amount so awarded ; but there is an error in the date from which the interest is to be computed, and a failure to allude to the costs and disbursements recovered in the action. The notice correctly describes the amount so recovered from Carrie M. Elwert, but states that it bears interest from April 9, 1896,—an error in the date from which the interest is to be computed ; and it also fails to mention the costs and disbursements. The abstract of the record shows that plaintiff recovered from the defendants J. B., Carrie M., and C. P. Elwert the costs and disbursements of this suit, taxed at $147.80, while the notice of appeal seems to describe a judgment against J. B. and Carrie M. Elwert only, for the costs, taxed at $170.20,—a failure to designate one of the parties defendant, and a misstatement of the amount awarded ; but it appears from what is de-

nominated an "Additional Transcript," recently filed, that objection was made to certain items of cost, whereupon plaintiff filed a supplemental cost bill, and the clerk passing upon the same retaxed the items thereof, and found the amount to be $170.20. It is true, the notice of appeal recites that the decree was given in favor of the plaintiff, and against said defendants, and each of them, which would seem to correct any error in failing to name C. P. Elwert as a party against whom the costs and disbursements were taxed. While the appellants failed to mention lot 5 in block 2 in the City of East Portland, they have correctly described in the notice of appeal all the other real property affected by the decree, and have also accurately stated the day upon which such decree was given. The question presented for consideration is whether, under these circumstances, the notice of appeal is effectual to confer jurisdiction. The statute provides that the notice shall state that the appellant appeals from the judgment or decree of the circuit court, or some specified part thereof (Hill's Ann. Laws, § 537, subd. 1), in construing which it has been repeatedly held that such notice must describe with reasonable certainty the decree complained of, the court in and the time at which such decree was given, the names of the parties to the suit, and the fact that one or more of them intend to appeal to the supreme court: *Lewis* v. *Lewis*, 4 Or. 209; *Christian* v. *Evans*, 5 Or. 253; *Weiss* v. *Commissioners of Jackson County*, 8 Or. 529; *Neppach* v. *Jordan*, 13 Or. 246 (10 Pac. 341); *Ream* v. *Howard*, 19 Or. 491 (24 Pac. 913). In *Crawford* v. *Wist*, 26 Or. 596 (39 Pac. 218), the court, in speaking of the sufficiency of a notice of appeal, says: "The tendency of the court, as indicated by recent decisions, is to construe notices of appeal liberally, and hold them sufficient if, by fair construction or reasonable intendment, the court can say that the appeal is taken

from the judgment in a particular case." Tested by this rule, we think the notice of appeal, though defective in many particulars, describes the decree complained of with reasonable certainty, and also conforms to the other requirements prescribed by the decisions of this court upon the subject.

2. Several objections urged to the undertaking on appeal seem to be well taken, in view of which we deem it expedient to require defendants to file a new one. It is true, they have not asked leave to do so, nor presented any affidavits tending to show that the failure to file a proper undertaking was occasioned through any mistake on their part. It has been held that an appellant cannot, under Hill's Ann. Laws, § 537, subd. 4, obtain leave to file a new undertaking on appeal without making it appear to the satisfaction of the court that the omission to file a sufficient undertaking within the time allowed by law was occasioned through mistake (*Pencense* v. *Burton*, 9 Or. 178; *De Lashmutt* v. *Sellwood*, 10 Or. 51); but this rule applies only to some patent omission in the execution of the instrument, such as a failure to indorse thereon the affidavits of the sureties, or to file the instrument, etc., and can have no application to a difference of opinion as to what constitutes a performance of the statutory requirements. The motion will, however, be allowed, unless the defendants, within twenty days, file a new undertaking.          MOTION OVERRULED.

Decided 29 January, 1900.

ON THE MERITS.

[59 Pac. 805.]

For appellants there were briefs over the names of *Dell Stuart*, and *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Lewis B. Cox.*

For respondent there were briefs over the names of *Starr, Thomas & Chamberlain, Edward Mendenhall in pro per.*, and *Pipes & Tifft*, with an oral argument by *Messrs. Mendenhall, Geo. E. Chamberlain*, and *Martin L. Pipes*.

MR. JUSTICE MOORE delivered the opinion.

This is a suit to set aside certain deeds of real estate and a chattel mortgage, to cancel the assignment of several promissory notes and mortgages, and to subject the property and securities affected thereby to the satisfaction of plaintiff's judgments.    The facts are that plaintiff, on April 6, 1896, obtained a judgment against the defendant Carrie M. Elwert in the Justice's Court for East Portland District for the sum of $225 and $17.10 costs, and within the time prescribed by law caused the same to be docketed in the judgment docket of the Circuit Court for Multnomah County, and on September 6, 1896, he obtained a judgment against the defendants Mrs. J. B. Elwert and her daughter, the said Carrie M. Elwert, in said circuit court, for the sum of $470 and $15.50 costs.    Executions were issued on said judgments, and delivered to the sheriff of said county, who, being unable to find any property of either of said defendants upon which he could levy, returned them wholly unsatisfied.    It appears from the transcript that Mrs. Elwert, until March 12, 1894, was the owner in fee of lot 4 and the south five feet of lot 3, in block 218, in the City of Portland, upon which she erected a new building in 1893, and also repaired an old one ; that she loaned money, taking promissory notes payable to her order, secured by real estate mortgages, executed by the persons, on the dates, and for the sums following, to wit : William Morton, November 10, 1890, $7,500 ; A. K. Velton, February 9, 1891, $3,500 ; Mary E. Knott, June 24, 1891, $3,000 ; R. S. Perkins, July 11, 1892, $27,500 ; P. A. Marquam, August 6, 1892, $15,000 ; and J. W. Hod-

son, August 10, 1893, $4,000 ; and also purchased and took an assignment of a note and mortgage executed by Frank Bode to Rachael L. Hawthorne for the sum of $966.66 ; that she caused some of these mortgages to be foreclosed, the premises therein described being purchased by Carrie M. Elwert, who, upon securing the sheriff's deeds there-for, executed conveyances thereof to her brother, the defendant Charles P. Elwert, to whom Mrs. Elwert assigned the remaining notes and mortgages.   She also, on March 12, 1894, for the expressed consideration of $36,000, executed to Charles P. Elwert a deed to lot 4 and the south five feet of lot 3, in said block 218.   George Weidler, on December 31, 1890, executed a mortgage securing notes payable to Charles P. and Carrie M. Elwert for the sums of $8,000 and $13,000, respectively, and Carrie M. Elwert assigned to her brother the latter note, and all her interest in said mortgage.   She also executed to him a mortgage of her household goods and furniture, purporting to secure the payment of a promissory note for $1,000, and Mrs. Elwert, on September 3, 1894, gave him her note for $4,567.77.   The value of the property thus conveyed to C. P. Elwert, as evidenced by the consideration recited in the several deeds, notes, and mortgages executed or assigned to him, is $124,034.43.

Plaintiff, referring to the amount involved in his respective judgments, alleges "that at the time of making said deeds, assignments, and transfers, and for a long time prior thereto, said J. B. Elwert and Carrie M. Elwert were indebted to this plaintiff in a large proportion of the sum before mentioned ; all of which the defendant C. P. Elwert knew at the time." It is also alleged, in substance, in the complaint, that said conveyances and chattel mortgage were executed, and the notes and mortgages assigned, without any consideration therefor, and with the intent to hinder, delay, and defraud the creditors

of Mrs. J. B. Elwert and her said daughter.  The separate answer of Mrs. Elwert, after denying the material allegations of the complaint, avers that her said son loaned her about $45,000, for which she executed to him her promissory notes, and that of such sum she expended about $36,000 in making the improvements on lot 4 and the south five feet of lot 3 in said block 218, and in furnishing the buildings erected thereon ; that the money loaned by her also belonged to her said son, who, at the time such loans were made, was a practicing physician in the City of New York ; that said notes and mortgages, for the sake of convenience only, were taken in her name and that of her daughter ; and that her said daughter, for the same reason, acted as her son's trustee in taking in her name the legal title to real property sold under said decrees of foreclosure.  She also alleges that, being unable to pay her son the money so borrowed, she executed to him a deed of her property in part payment of the debt.  The separate answer of Charles P. Elwert denies the material allegations of the complaint, and avers, in substance, that, being possessed of a large sum of money for which he was seeking investment, he sent it to the First National Bank of Portland, to be loaned, for the reason that a greater rate of interest could be obtained in the State of Oregon than in the City of New York ; that this money was loaned in Multnomah County, and notes and mortgages therefor were taken in the name of his sister or his mother, for the purpose of convenience, they having no right or interest therein, and holding the legal title thereto in trust for him.  The allegations of new matter in these answers having been denied in the replies, a trial was had, resulting in a decree as prayed for in the complaint, and defendants appeal.

3.  The question presented by this appeal is whether the defendants, Mrs. Elwert and her daughter, were in-

debted to Charles P. Elwert to the extent claimed at the
time the deeds and the chattel mortgage were executed
and the notes and mortgages assigned to him.   If truly
answered in the affirmative, it follows that the decree
must be reversed, for the rule is well settled in this state
that a debtor may prefer a creditor, to whom he may
transfer all his property in payment of his debt :   *Sabin*
v. *Columbia Fuel Co.* 25 Or. 15 (42 Am. St. Rep. 756, 34
Pac. 692).   The creditor's knowledge that the debtor is
in failing circumstances, that he has other creditors, or
that the satisfaction of his own debt exhausts all of the
debtor's property, will not defeat his right to accept a
transfer or mortgage thereof if there be no intent upon
the part of the preferred creditor to hinder, delay, or de-
fraud the other creditors of the debtor :   *Currie* v. *Bow-
man*, 25 Or. 364 (44 Am. & Eng. Corp. Cas. 662, 35 Pac.
848).   It is only when the grantor or mortgagor reserves
to himself some benefit which he expects to derive from
the execution of a deed or mortgage of his property, that
a court of equity will intervene at the suit of a creditor,
and set aside such transfers as a fraud upon the latter's
right :   *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999).   The trans-
fer by a debtor of all his property is not an ordinary
transaction, and whenever it occurs courts of equity re-
gard it as a badge of fraud :   Bump, Fraud. Conv. 34 ;
Wait, Fraud. Conv. (3 ed.) § 231.   So, too, when a debtor
conveys his property to a relative, and his creditors sus-
tain any loss in consequence thereof, such relation im-
poses upon the parties to the conveyance the burden of
showing that the transfer was made in good faith and
for a valuable consideration :   Bump, Fraud. Conv. 54 ;
*Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999) ;   *Flynn* v. *Baisley*,
35 Or. 268 (45 L. R. A. 645, 57 Pac. 908) ;   *Aultman* v.
*Obermeyer*, 6 Neb. 260 ;   *Carson* v. *Stevens*, 40 Neb. 112
(42 Am. St. Rep. 661, 58 N. W. 845) ;   *Seitz* v. *Mitchell*,

94 U. S. 580, 24 L. Ed. 179.   Thus, where a debtor con-
veys the whole of his estate to a brother, ostensibly in
satisfaction of his debt to the latter, in a suit by creditors
to set aside the deed for fraud it is incumbent upon the
grantee to establish by satisfactory proof that there was
a valuable and adequate consideration for the premises ;
and, unless he can give a clear and precise account of the
items constituting the alleged debt, a fraudulent intent
will be inferred :   *Marks* v. *Crow*, 14 Or. 382 (13 Pac. 55).
In the light of these rules the testimony taken at the trial
will be examined.

4.   It is undisputed that in 1883 Mrs. Elwert sold a lot
in the City of Portland to Henry Failing, receiving there-
for the sum of $50,000 ;   that, after securing this money,
she moved to California, where she remained until about
1891, when she returned to Portland, and began improv-
ing her property ;   that between January 2, 1889, and
June 30, 1892, she deposited in her own name with the
First National Bank of Portland the sum of $60,847.75 ;
that she withdrew this money from said bank, and be-
tween May 25, 1892, and July 11, 1893, deposited in her
own name with the Portland Savings Bank the sum of
$74,247.54.   It also appears that between May 25, 1892,
and July 19, 1893, there was deposited with the latter bank
to the credit of Charles P. Elwert the sum of $7,750.56,
and to the credit of Carrie M. Elwert the sum of $6,428.40.
Charles P. Elwert, as a witness in his own behalf, testi-
fied that he did not know that any money had been de-
posited with the Portland banks in his name, but that the
money so deposited in the name of his mother and sister
belonged to him, and that his mother borrowed from him
about $125,000.   In explaining the manner in which he
acquired this money, he says, in substance, that, after go-
ing to California with his mother, he secured a medal by

36 OR.—25.

reason of having attained the highest honors of his class in college at Benicia, in that state, and because of his success in this respect, his uncle, Dr. Frederick Ziler, made him a present of $2,000, which money his cousin profitably invested for him, but he does not recollect what sum was realized therefrom ; that, his uncle having died, he received as a first payment from his estate, "either some $10,000 or $11,000 or $12,000," which he invested in electric light stock at $11, selling it at $27 or $28, whereby he made a profit of some $30,000 ; that he bought sixty or seventy lots in Cornell Beach, for which he paid between $40 and $50 per lot, and, after holding them three or four years, sold them for $500, $600, and $700 each, and for one corner lot he received more than $1,000, making a return of something like $36,000 or $38,000 ; that in one week he made a profit of $7,000 from the purchase and sale of locomotive stock ; that he was engaged in mining, bought and sold real property, and operated a drug store, and by these means secured the sum of $125,000, —the greater portion of which was in gold, the remainder in greenbacks,—which he placed in the California Safe Deposit, and in 1890, when he went to New York, he delivered the key of this safe deposit to his sister, instructing her to loan and manage this money according to her best judgment. Speaking of the money loaned to his mother,—about $90,000 or $95,000,—for which she gave him her individual notes, he states that he destroyed her letters showing such loans.

Carrie M. Elwert testifies that her brother delivered to her $125,000 which was in the safe deposit, and gave her a key thereto, which she retained about two years, but she cannot remember when he gave it to her, nor can she give the number of the vault in which the money was deposited ; that she loaned her mother about $125,000, but destroyed the account thereof, and also all letters re-

ceived from her brother; that she received from her uncle
about $10,000, of which she loaned $7,000 or $8,000 to one
Montigne, a stove dealer at Oakland, California, whose
given name she cannot remember,—but he failed and she
lost this amount; that she lost the remainder of her
money speculating in stocks, and that the chattel mort-
gage executed to her brother was given to secure a valid
loan made by him; that the loan of $21,000 made to
Weidler was also his money, but by some mistake the
note evidencing $13,000 was made payable to her. Mrs.
Elwert testifies that with the money received from Failing
she purchased six hundred shares of electric light stock
at $32, and, after paying an assessment thereon of $2,
sold the stock at $7, losing about $20,000; that she dealt
in mining stock for some time until she lost every dollar
she possessed, but she cannot state when this occurred;
that the money deposited in her name with the First Na-
tional Bank of Portland was borrowed from her son, to
whom she executed her promissory notes bearing six per
cent. interest; that the money so borrowed she loaned
on real estate securities, taking notes therefor in her own
name, and obtained a higher rate of interest than she
was paying, which difference she retained as compensa-
tion for her service; that she assigned the notes and
mortgages to her son, and, on settling their accounts, she
owed him nearly $5,000. On cross-examination she was
asked: "Have you had any correspondence with your
son,—any letters from him?" to which she replied, "Yes,
of course. Q. What have you done with those letters?
A. Destroyed them. Q. All destroyed? A. Yes."

James N. Davis, an attorney, appearing as a witness
for plaintiff, testifies that on March 12, 1894, he prepared
and took Mrs. Elwert's acknowledgment to a deed to her
son of her property, and at that time Carrie, speaking of
the reason for making it, said that people were taking

advantage of her mother, and trying to get her property away from her, and she was making this deed for her protection. William Harris, a real estate dealer, being called as a witness for plaintiff, testified that in the summer of 1894 Mrs. Elwert desired him to sell her property for $35,000, but in 1895 offered it for $25,000 ; that he had known Charles P. Elwert from boyhood, and in 1895 saw him with his sister, Carrie, in Portland, and he asked the witness if he was going to sell his mother's property, to which he replied that property was low, and could not then be sold. Witness says he met him again shortly afterwards on Third Street, and asked him who owned this property, to which he replied, "I don't own it exactly, but my mother owns it ;" and in further conversation he said he had a deed to the property, and owned it, but that it was "for a certain purpose," which he did not explain ; that the Weidler mortgage of $8,000 was all the interest he had in Portland, and that he was sorry he had that, and did not want any more. Plaintiff, appearing as a witness in his own behalf, testified that Charles P. Elwert told him he never paid a cent for his mother's property, and had no interest whatever in it. G. E. Hays says that he was introduced to Charles P. Elwert, and heard him say, referring to his mother's property, that the title was in him, but his mother was the real owner. John Mann testified that Mrs. Elwert and her daughter told him that they were so much embarrassed that they were going to transfer their property. Mrs. Elwert and her son and daughter deny the statements imputed to them, Charles P. Elwert saying that he never saw the plaintiff prior to the day he appeared as a witness. The trial court, upon this conflicting testimony, having found that Charles P. Elwert was the owner of the $8,000 Weidler note only, it is contended by defendants' counsel that their clients, by disclosing the sources from which

the money so loaned was derived, afforded plaintiff an opportunity of examining the records of the Safe-Deposit Company in San Francisco, the public records relating to the transfer of real property at Cornell Beach, and the corporate records of the several companies the purchase and sale of whose stock contributed to the wealth of Charles P. Elwert, while it dissipated that of his mother; but that, plaintiff having failed to take advantage thereof, or to controvert in any manner the testimony of the defendants in this respect, the court erred in rendering a decree for plaintiff.

5.    Whatever the rule may be in regard to the burden of proof in suits to set aside for fraud conveyances executed by a grantor who is not related to the grantee, the point insisted upon can have no application to the case at bar, in which the *onus probandi*, by reason of such relation, is cast upon the defendants to show the *bona fides* of the several transactions, and to supplement their testimony by the evidence which was more particularly within their knowledge and power to produce: *Shmit* v. *Day*, 27 Or. 110 (39 Pac. 870). The fact that each defendant testified that all evidence tending to establish Charles Elwert's ownership of the money was destroyed is a circumstance from which it may be inferred that their testimony in respect to his ownership is untrue, for it is not reasonable to suppose that, with relatives even, the evidence of the loan and management of such a sum of money would be wholly destroyed. Charles Elwert's failure to remember what sum was realized from the investment made by his cousin of the money received as a present from his uncle is remarkable. He was then young, and, being in college, his mind was free from business cares, and, as this was the first sum of money of any magnitude that he ever possessed, it is unreasonable to suppose that he could not remember how it was invested, or what

sum was realized therefrom ; and hence his lack of memory is a circumstance tending to cast discredit upon his testimony. He was in the prime of life when appearing as a witness, and hence his memory must have been retentive ; and if it be true, as he claims, that he amassed the sum of money in question, while he might forget the details of the later investments, and the sums realized therefrom, the memory of his first financial venture must necessarily have been vivid. Mrs. Elwert took with her to California $50,000, and, as she claims, lost every dollar of it in speculation, yet she cannot remember when the sum was exhausted. It seems improbable that, possessing, as she did, such a sum of money, she would not remember, if it were a fact, when, from a state of affluence, she was reduced by speculation to a condition of almost penury. These circumstances induce the conclusion that the trial court committed no error in its findings, and hence it follows that the decree is affirmed.

Affirmed.